133 N.J. Super. 180 (1975)
336 A.2d 11
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHRISTOPHER X. THOMPSON AND LAWRENCE X. THOMPSON, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1974.
Decided March 27, 1975.
*182 Before Judges MICHELS, MORGAN and MILMED.
Mr. Michael Grodjeski, Assistant Deputy Public Defender, argued the cause for appellants (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Franklin L. Flacks, Assistant Prosecutor, argued the cause for respondent (Mr. Wilbur H. Mathesius, Acting Mercer County Prosecutor, attorney).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendants appeal from a judgment of the Law Division vacating its prior restraint against the transfer of temporary custody of defendants to New York in accordance with the provisions of the Interstate Agreement on Detainers adopted by both New York and New Jersey. Execution of the judgment was stayed pending appeal.
Defendants were convicted in Camden County on an indictment charging assault and battery upon a police officer, assault with intent to kill a police officer and possession of a weapon, and on June 18, 1971 were sentenced to State Prison terms totalling 15 to 19 years. Since that date defendants have been, and presently are, in the custody of New Jersey.
On June 15, 1972 an indictment was returned in Kings County, New York, charging defendants and five others with attempted murder, assault in the first degree, assault in the second degree and possession of weapons in Kings County on or about August 14, 1970. On June 20, 1972 warrants for the arrest of defendants were issued in Kings County and on December 3, 1973 they were lodged with the warden of the State Prison as detainers against both defendants. *183 While, presumably, defendants were notified of these detainers pursuant to N.J.S.A. 2A:159A-3(c), neither one made a request for final disposition of the indictment on which the detainers were based. See N.J.S.A. 2A:159A-3 (a).
Thereafter, on or about April 11, 1974, the District Attorney of Kings County requested temporary custody of both defendants under Article IV of the Interstate Agreement on Detainers (N.J.S.A. 2A:159A-4). Letters dated April 11, 1974 containing copies of requests for temporary custody (Form 5) of each defendant were sent to the Commissioner of Institutions and Agencies and the Superintendent of the State Prison. By letters dated June 4, 1974 the Acting Superintendent of the State Prison informed the District Attorney of Kings County that, with respect to each defendant, "We, as well as the prisoner, are in receipt of your Request For Temporary Custody," and that he was notifying the Governor of the State of New Jersey of the requests. He further informed the District Attorney that the Governor would have 30 days to approve or disapprove the request, and that he would advise of any further action, enclosing certificates of inmate status (Form 3) for each defendant. At the same time the Acting Superintendent sent to the Governor of the State of New Jersey letters dated June 4, 1974 in which he informed the Governor of the receipt of the requests for temporary custody for each defendant and indicated that each had also received his copy. The Acting Superintendent advised the Governor that the request was being referred to his office in accordance with Article IV, paragraph (a), of the Interstate Agreement (N.J.S.A. 2A:159A-4) and requested the Governor's advice.
On June 24, 1974, before the Governor took any action on the request, defendant Christopher X. Thompson applied for and obtained an ex parte order in the Law Division restraining his transfer to New York for its temporary custody under the provisions of the Interstate Agreement. Defendant *184 alleged that he never requested New York to obtain custody of him for the purpose of disposing of the detainer and requested a formal hearing to contest the legality of his transfer, pursuant to the provisions of N.J.S.A. 2A: 159A-4(d). The ex parte order had the effect of also staying the transfer for temporary custody of defendant Lawrence X. Thompson.
On July 3, 1974 Assistant Counsel to the Governor acknowledged receipt of the request for temporary transfer of both defendants to New York and informed the Superintendent that the Governor had the right to disapprove the requests within 30 days of their receipt, and that the Governor "will not exercise his right in this instance as no grounds have been advanced for not honoring New York's request."
On October 25, 1974 the prosecutor moved to vacate the restraints. The Law Division judge held that Article IV of the Interstate Agreement on Detainers did not require an extradition type hearing and vacated the prior restraint against the transfer for temporary custody of defendants by New York. Defendants appeal, contending that such interpretation of Article IV violated their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, and seek a stay of their delivery to New York until they have been brought before a judge of a criminal court of record and notified of their right to petition the Governor and, if they desire to contest the legality of their delivery to New York, to fix a reasonable time to apply for writs of habeas corpus. Cf. N.J.S.A. 2A:160-18.[1]
*185 Article IV (N.J.S.A. 2A:159A-4) in pertinent part provides:

ARTICLE IV
(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V (a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

* * *
(d) Nothing contained in this Article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or ordered such delivery.
We construe the phrase "to contest the legality of his delivery as provided in paragraph (a) hereof" to mean that within 30 days after receipt by the appropriate authority in the sending state of the written request by the receiving state for temporary custody of the prisoner, the prisoner may move before the Governor of the sending state to disapprove the request. His failure to do so would be tantamount to a waiver of any right which he may have to contest the legality of his delivery. Defendants never moved *186 before the Governor to disapprove New York's request for temporary custody of them, and therefore we hold that they waived any right which they may have had to contest the legality of their delivery to New York. Moreover, the Governor did not disapprove the requests, thereby entitling the District Attorney of Kings County to have defendants made available in accordance with the provisions of Article V of the Interstate Agreement (N.J.S.A. 2A:159A-5) so that a speedy and efficient prosecution may be had of the pending indictment against them in Kings County.
We find no merit to defendants' constitutional attack on Article IV of the Interstate Agreement. Procedural due process is satisfied. The filing of a detainer under the Interstate Agreement served to inform defendants that criminal charges had been brought against them in New York, and that Article IV required that there be a period of 30 days after receipt by the appropriate New Jersey authorities of a request for temporary custody before defendants may be released to New York. Thus, defendants were given notice and afforded a reasonable time within which to contest the legality of their delivery to New York. Wertheimer v. State, 294 Minn. 293, 201 N.W.2d 383, 386 (Minn. Sup. Ct. 1972).
Moreover, we do not agree that the Equal Protection Clause is violated by the failure to afford defendants an extradition type hearing. The Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination. Schilb v. Kuebel, 404 U.S. 357, 379, 92 S.Ct. 479, 30 L.Ed.2d 502, 519 (1971); Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563, 573 (1955); Shelton College v. State Bd. of Ed., 48 N.J. 501, 521 (1967).
* * * If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the law-makers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to *187 achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal. State v. Young, 57 N.J. 240, 249-250 (1970); New Jersey Chap., American Institute of Planners v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 601-603, appeal dismissed 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967); David v. Vesta Co., 45 N.J. 301, 314-315 (1965). [State v. Smith, 58 N.J. 202, 207 (1971)].
There is a reasonable basis for recognizing as a separate class those persons already in prison whose temporary custody is sought pursuant to Article IV of the Interstate Agreement on Detainers in order to dispose of pending criminal charges against them and thus eliminate some of the uncertainties that obstruct programs for their treatment and rehabilitation, and to treat them differently from persons not in prison whose custody is sought pursuant to the Uniform Criminal Extradition Law. The Interstate Agreement on Detainers was adopted to expedite the disposition of criminal charges pending against a person in one state who is serving a term of imprisonment in another state by providing for the transfer of a prisoner by the state of imprisonment for temporary custody in the state which lodged the detainer based upon the pending criminal charge, in order that the prisoner may be brought to trial on such charge. The transfer may be made either on the prisoner's initiative under Article III or on the initiative of the state lodging the detainer under Article IV. See State v. Masselli, 43 N.J. 1, 4 (1964). During the continuance of temporary custody for trial, time being served on the sentence continues to run, and after the trial is concluded the prisoner is to be returned to the sending state "at the earliest practical time." See Carrion v. Pinto, 79 N.J. Super. 13, 16 (App. Div. 1963). Consequently, when there is a transfer of temporary custody under the Interstate Agreement, the person already incarcerated suffers no additional restriction on his freedom. However, a person not in custody whose custody is sought pursuant to the Uniform Criminal Extradition *188 Law loses his freedom, requiring greater safeguards to protect him from unwarranted extradition.
The result that we reach here is supported by Wertheimer v. State, supra, where the Minnesota Supreme Court rejected a similar constitutional attack on the Interstate Agreement on Detainers, stating:
We cannot agree that such a classification is per se arbitrary and unreasonable. A prisoner is in a situation completely different from that of the ordinary citizen whose freedom is unrestricted. By being called upon to defend against a charge in another jurisdiction, a prisoner suffers no additional restriction on his freedom; he continues to gain credit for time served while in the temporary custody of the foreign jurisdiction. The average citizen, however, faces a far different situation. His freedom of movement, previously unrestrained, is brought to an and. He is removed from his community, family, friends, and job under conditions which may permanently cloud his reputation, and, as such, his need for protection from extradition on spurious charges is far greater than that of the prisoner. [at 385-386]
We are not persuaded to reach a different result by State ex rel. Garner v. Gray, 55 Wis.2d 574, 201 N.W.2d 163 (1972), cited by defendants. There the Wisconsin Supreme Court held that the Uniform Detainer Act violated procedural due process requirements and the Equal Protection Clause of both the federal and state constitutions in that it failed to adequately notify a prisoner of his right to petition the governor to deny the custody request or to seek a writ of habeas corpus challenging his impending transfer. The court also held that the Detainer Act violated the Equal Protection Clauses of both constitutions because there was no rational basis to distinguish between prisoners whose custody was sought under the Detainer Act and prisoners whose custody could be sought under the Extradition Act. The Wisconsin Supreme Court ruled that the constitutional defects, however, could be cured by requiring that any person who is sought by out-of-state authorities under the Detainer Act be afforded a type of hearing similar to that provided by the Extradition Act, at which hearing a prisoner sought to *189 be delivered may be advised by a judge of a court of record of the existence of the detainer and his various rights under the Detainer Act. We have carefully studied the majority opinion in that case and disagree with it. We find the excellent analysis of the constitutional issues by Justice Hansen in the dissenting opinion (201 N.W.2d at 170) to be far more compelling and in accord with our construction of the Interstate Agreement.
For the reasons herein expressed we affirm the judgment of the Law Division vacating the restraints against the transfer of defendants to New York for temporary custody in accordance with the provisions of the Interstate Agreement on Detainers, and we vacate the stay of execution of judgment which we granted pending this appeal.
NOTES
[1] At oral argument we requested that defendants' counsel inform us of the factual basis for the challenge to the legality of defendants' delivery to New York pursuant to Article IV, and accordingly each defendant filed an affidavit which states: "I am unable to recollect where, or who I was with at the time of the alleged offense. I cannot recall even the day of the week that far in the past. Therefore I feel that the burden lies on the New York authorities." Thus, even if defendants were granted an extradition type hearing, they would be unable to offer any contradictory proof to overcome the presumptive evidence that they were charged with crimes under laws of the State of New York, that they were within the jurisdiction of New York when the crimes allegedly occurred, and that they had since fled the jurisdiction. See State v. Phillips, 62 N.J. Super. 70, 74-75 (App. Div. 1960), aff'd o.b. 34 N.J. 63 (1961); State v. Foley, 32 N.J. Super. 154, 158-159 (App. Div. 1954).