Leslie ATKINSON, Plaintiff-Appellant,

v.

Jack HANBERRY, Warden,
Defendant-Appellee.

No. 78–1469.

United States Court of Appeals,
Fifth Circuit.

Feb. 16, 1979.

Stephen A. Kermish, Atlanta, Ga., for plaintiff-appellant.

William L. Harper, U. S. Atty., Atlanta, Ga., Henry E. Davis, U. S. Dept. of Justice, Civ. Div., Washington, D. C., for defendant-appellee.

Before TJOFLAT and HILL, Circuit Judges, and HIGGINBOTHAM,* District Judge.

PATRICK E. HIGGINBOTHAM, District Judge:

Leslie Atkinson is in custody in the United States Penitentiary in Atlanta, Georgia. The state of Ohio wishes to try him on two alleged state offenses. The Bureau of Prisons agreed to transfer him to Ohio, and the district court refused to block the transfer.

* District Court Judge of the Northern District of Texas, sitting by designation.

1. Congress enacted the Interstate Agreement on Detainers Act in 1970, joining the United States and the District of Columbia with 46

On appeal, Atkinson challenges neither the validity of the detainer itself nor Ohio's right to try him on the charges underlying it. Rather, he simply contends that Article IV of the Interstate Agreement on Detainers Act, 18 U.S.C. App. (1976)[1] and the Due Process Clause of the Fifth Amendment entitle him to a hearing before transfer to Ohio because the threatened transfer will cause him hardship, including the possible loss of his job at the federal prison. Thus we are not called upon to here decide the scope of judicial review, if any, of an administrative decision to transfer a prisoner pursuant to the Agreement. *See Michigan v. Doran,* —— U.S. ——, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). We decide only that Atkinson is neither constitutionally nor statutorily entitled to a hearing, either judicial or administrative, and we affirm the district court's denial of relief.

On January 23, 1978, the Court of Common Pleas, Summit County, Ohio, lodged a detainer requesting temporary custody of Atkinson from the Warden of the Atlanta Penitentiary. The federal authorities agreed to transfer him to Ohio on March 8, 1978. On March 2, 1978, Atkinson, through counsel, wrote the President of the United States asking that Ohio's request for temporary custody be denied. In early April, the Bureau of Prisons' Regional Attorney in Atlanta without a hearing denied Atkinson's request. Atkinson also sought judicial relief, filing on February 21, 1978, a petition for writ of habeas corpus to expunge the detainer and enjoin the transfer to Ohio. The United States District Court, Northern District of Georgia, denied Atkinson's petition without a hearing or a response from the Atlanta warden. This court stayed the transfer pending appeal.

States as parties to the Agreement. The Agreement contains eight provisions which will be referred to here by their original article numbers, as set forth in § 2 of the Act.

## I.

■ The Agreement does not explicitly give Atkinson a statutory right to a hearing. Article IV(a) of the Agreement allows a federal prisoner to move the Attorney General to disapprove a state's request for temporary custody. This article provides in part

[t]hat there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor[2] of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

Nor does this language imply that a hearing is required before transfer. Indeed, the Supreme Court has stated that "[Art. IV(a)] was meant to do no more than preserve previously existing rights of the sending States, not to expand them." *United States v. Mauro*, 436 U.S. 340, 363, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978). Additional evidence that the Agreement does not imply a right to a hearing is found in Art. IV(d), which states that the executive authority of the sending state need not affirmatively consent before a transfer.[3] In the case of prisoners in federal custody, the "executive authority of the sending state" is, under section 3 of the Agreement, exercised by the Attorney General of the United States. The Attorney General's power to transfer federal prisoners to state custody is also governed by 18 U.S.C. § 4085 (1976).[4] Atkinson can take no solace in that statute either, however, because it makes no mention of a hearing but allows the Attorney General to transfer a prisoner "if he finds it in the public interest to do so." There must be proper documentation for the state court request, but upon such proof the Attorney General need not consider the prisoner's interest if the public's interest prevails.[5] We conclude, then, that Atkinson does not have a statutory right to a hearing concerning his transfer to Ohio.

## II.

■ We further conclude that Atkinson does not have a constitutional right to a hearing. The Supreme Court in *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), ruled that "the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system," 427 U.S. at 225, 96 S.Ct. at 2538. Absent a right or justifiable expectation created by state law, transfer of a state prisoner to a less desira-

---

2. Under the Agreement "Governor" means the Attorney General for purposes of the United States. 18 U.S.C. App. § 3 (1976).

3. Art. IV(d) states:
   Nothing contained in this article shall be construed to deprive any prisoner of any right which he may have to contest the legality of his delivery as provided in paragraph (a) hereof, but such delivery may not be opposed or denied on the ground that the executive authority of the sending State has not affirmatively consented to or ordered such delivery.

4. 18 U.S.C. § 4085 (1976) states:
   (a) Whenever any federal prisoner has been indicted, informed against, or convicted of a felony in a court of record of any State or the District of Columbia, the Attorney General shall, if he finds it in the public interest to do so, upon the request of the Governor or the executive authority thereof, and upon the presentation of a certified copy of such indictment, information or judgment of conviction, cause such person, prior to his release, to be transfer-

red to a penal or correctional institution within such State or District.
   If more than one such request is presented in respect to any prisoner, the Attorney General shall determine which request should receive preference.
   The expense of personnel and transportation incurred shall be chargeable to the appropriation for the "Support of the United States prisoners."
   (b) This section shall not limit the authority of the Attorney General to transfer prisoners pursuant to other provisions of law.
   *See also Ponzi v. Fessenden*, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607 (1922) which was codified in 18 U.S.C. § 4085.

5. It has been held that a prisoner "has no valid objection because of . . . transfer [under § 4085]." *Konigsbery v. Ciccone*, 285 F.Supp. 585, 601 (W.D.Mo.1968), *aff'd*, 417 F.2d 161 (8th Cir. 1969), *cert. denied*, 397 U.S. 963, 90 S.Ct. 996, 25 L.Ed.2d 255 (1970).

ble institution within the state prison system does not amount to a deprivation of liberty within the meaning of the Due Process Clause:

> Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all. *Meachum, supra* at 228, 96 S.Ct. at 2540.

Of course, no hearing is required if no deprivation of liberty is involved.

We think this holding applies to a federal prisoner seeking protection under the Due Process Clause of the Fifth Amendment. The hardship that Atkinson claims he will suffer by reason of his transfer to Ohio—absence from and possible loss of his job at Atlanta Penitentiary—is no greater than that suffered by the state prisoners in *Meachum* and *Montayne*. Moreover, just as the state prisoners in those cases had no substantial expectation that they would not be transferred, here no federal law creates a right or expectation for a federal prisoner to avoid transfer to state authorities to stand trial on state charges. Indeed, 18 U.S.C. § 4085 creates the opposite expectation.[6]

Absent either a statutory or a constitutional "liberty interest," the Fifth Amendment does not guarantee to Atkinson the right to a hearing concerning his transfer to Ohio to stand trial on state charges.

AFFIRMED.

---

**6.** It might be argued that the procedure involved here is akin to extradition, in that the Agreement provides for transfer of a prisoner to a foreign jurisdiction to stand trial on criminal charges and that, consequently, a prisoner transferred pursuant to the Agreement should enjoy all of the rights of persons extradited under the Federal Extradition Statute, 18 U.S.C. § 3182 (1976), despite the obvious distinction that the Agreement applies only to prisoners. Without accepting the argument, we note that it has never been held that a person sought to be extradited is constitutionally entitled to a hearing. *See Munsey v. Clough*, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515 (1905). Generally, the only challenge to extradition is by writ of *habeas corpus*, and then the scope of review is narrow. *See Michigan v. Doran*, —— U.S. ——, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978), where the Supreme Court held as follows:

> A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met. . .
> Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

Without deciding whether these issues may be reviewed with respect to a transfer under the Interstate Agreement on Detainers Act, we note that the petitioner here has raised none of these issues.