Ray Kevin **AREBAUGH**, Appellant,

v.

Governor John **DALTON**, Attorney General Marshall Coleman, Terrell D. Hutto, Director, Appellees.

No. 82–6436.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1984.

Decided March 28, 1984.

David E. Nagle, Richmond, Va. (Markham, Meath & Drumheller, Richmond, Va., on brief), for appellant.

Alan Katz, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

Ray Kevin Arebaugh is and, from some time prior to September 5, 1980 has been, a Virginia prisoner. For a relatively short period in 1981 he was in the hands of North Carolina authorities. On September 5, 1980, North Carolina, proceeding pursuant to the Interstate Agreement on Detainers, Va.Code § 53.1–210 (1982 Repl. Volume), had sought his temporary presence in North Carolina for purposes of trying him on criminal charges there. On February 2, 1981, the requested transfer occurred, conviction was obtained in North Carolina and Arebaugh was returned to Virginia to continue serving the sentence which, in the first place, created the background for the present proceeding.

Between September 5, 1980 and February 2, 1981, the following occurred:

1. Arebaugh, promptly and repeatedly, demanded an extradition hearing prior to, and in order to contest, and foil, if possible, the requested transfer to North Carolina. On October 23, 1980 Arebaugh sent a letter to an Assistant Attorney General of the Commonwealth of Virginia requesting an extradition hearing. On February 1, 1981, informed by a Virginia correction officer that the transfer was about to take place, Arebaugh protested, and repeated his request for an extradition hearing. He reiterated to the North Carolina officials sent to collect him that he still wanted a hearing and had done nothing to waive his right to such a hearing.

2. On January 21, 1981 the Supreme Court announced, and, on the same day, United States Law Week published, the opinions in *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (6–3, 1981). That case established the right under federal law of a prisoner to obtain a preliminary hearing prior to a transfer pursuant to the Agreement on Detainers.

3. On February 2, 1981, transfer of Arebaugh occurred despite the failure to afford him the repeatedly requested hearing.

■ Arebaugh filed an action under 42 U.S.C. § 1983, seeking damages.[1] Holding that, as a matter of law, a good faith defense had been established, the district judge granted summary judgment in favor of the defendants. Such disposition was, in our judgment, simply premature.

■ First, the burden is on the defendants to establish a good faith defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Second, for a period of 12 days before Arebaugh's transfer had been effected, its impropriety was fully established by the Supreme Court of the United States,[2] absent an extradition hearing the result of which would have to have been a determination that the transfer would have been proper.

There is no evidence before us demonstrating whether the defendants actually knew or should have known, by February 2, 1981, of the *Cuyler v. Adams* decision. Obviously the office of the Commonwealth's Attorney General, called upon regularly to represent the agency in which the defendants served, had at the least a responsibility currently to keep up to date in the legal area in which the case of *Cuyler v. Adams* fell. To escape liability, the defendants, with the burden of proof reposing on them, had the responsibility to demonstrate that there existed a good faith explanation either for the failure of those responsible to know of the decision in *Cuyler v. Adams*, or, if those responsible were in fact aware of the decision, for the subsequent failure to communicate that knowledge to the prison officials.

■ The fact is that actual damages may be impossible for Arebaugh to prove. It is unlikely that the conviction in North Carolina happened in a trial improperly permitted to go forward, or led to an unmerited conviction. Nevertheless, at least nominal damages were recoverable. *Carey v. Piphus*, 435 U.S. 247, 266–7, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1977). That sufficed to defeat an entry of summary judgment.

■ Under *Harlow v. Fitzgerald, supra*, a good faith defense will not succeed if, as was plainly the case here, the asserted right was clearly established by law at the time of the official action infringing upon the right, unless, by reason of extraordinary circumstances, the defendants neither knew nor reasonably should have known of the law. The burden, on the surface, does not appear easy to meet. In all events, and that is the controlling point, no sufficient attempt to satisfy the burden has as yet been made.

The defendants have cited the unpublished opinion in *Harris v. Young*, 718 F.2d 620 (4th Cir.1983) which insulated state officials from liability until the date of publication of a Supreme Court decision finally

---

1. He also prayed a writ of *habeas corpus* to relieve him of the consequences of the North Carolina conviction. That, however, was patently unavailable in the current proceeding against Virginia authorities. Title 28 U.S.C. § 2242; *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494–5, 93 S.Ct. 1123, 1129–30, 35 L.Ed.2d 443 (1973) ("The writ of habeas corpus ... [acts] upon the person who holds him in what is alleged to be unlawful custody.").

2. It is hard not to look askance at the contention that, the Supreme Court vote on the point being "only" 6–3, there was some justification for a failure to comply with fully established constitutional law as authoritatively laid down by our highest judicial authority. A vote 6–3 is a vote of 2–1 three times over, and we do not condone a suggestion that a judgment of a split Fourth Circuit Court of Appeals three judge panel may be disregarded.

placing ultimate legal *imprimatur* on a doctrine asserted by the plaintiff. We have no occasion here to reexamine the question of whether, in appropriate circumstances, a defendant could be held at least to have had a duty to know of the rights of the prisoner seeking relief even before the last word from the Supreme Court came down. As far as *Harris v. Young* affords persuasive authority (it is not binding in any event. *See* Rule 18 of the Court of Appeals for the Fourth Circuit Supplementing the Federal Rules of Appellate Procedure), it would appear to fix January 21, 1981 as the cut-off date for present purposes. That is not unreasonable, bearing in mind that the doctrine finally put in place by *Cuyler v. Adams* had already been announced in several lower court cases. *See Adams v. Cuyler,* 592 F.2d 720 (3rd Cir.1979); *McQueen v. Wyrick,* 543 S.W.2d 778 (Mo.1976); *Moen v. Wilson,* 189 Colo. 85, 536 P.2d 1129 (1975); and *State ex rel. Garner v. Gray,* 55 Wis.2d 574, 201 N.W.2d 163 (1972).[3] *Certiorari* had been granted in *Cuyler v. Adams* on February 19, 1980, almost a year before final decision at the Supreme Court level. Twelve days may well turn out to have been sufficient time for someone with a direct interest to have learned of, read and digested the *Cuyler v. Adams* holding.

Accordingly, we reverse and remand for further proceedings conforming to this opinion.

REVERSED AND REMANDED.

---

**3.** To the contrary, however, *see Atkinson v. Hanberry,* 589 F.2d 917 (5th Cir.1979); *Commonwealth ex rel. Coleman v. Cuyler,* 261 Pa.Super. 274, 396 A.2d 394 (1978); *State v. Thompson,* 133 N.J.Super. 180, 336 A.2d 11 (1975); *Hystad v. Rhay,* 12 Wash.App. 872, 533 P.2d 409 (1975); and *Wertheimer v. State,* 294 Minn. 293, 201 N.W.2d 383 (1972).