### Ray Kevin AREBAUGH

v.

### John DALTON, Governor, et al.

### Civ. A. No. 81–0974–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 4, 1985.

David Nagle, Richmond, Va., for plaintiff.

Alan Katz, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff, Ray Kevin Arebaugh, a Virginia State prisoner, commenced this action under 42 U.S.C. § 1983 *in forma pauperis* and *pro se* on 3 November 1981 against the

Honorable John Dalton, Governor of the Commonwealth of Virginia, J. Marshall Coleman, the then Attorney General of the Commonwealth, and Terrell D. Hutto, the then Director of the Virginia Department of Corrections.[1] On 20 November 1981, plaintiff filed a motion for leave to file an amended complaint adding other defendants. The motion was granted and J.E. Collins, a correctional superintendent, Sergeant Frazier, a correctional officer, and Julian Pugh, Chief of the Records and Transportation Unit for the Virginia Department of Corrections, were made additional parties defendant. Plaintiff, who was represented by counsel both on appeal and upon remand to this Court, has filed no other motions to add parties or to amend the complaint.

Plaintiff alleges in his amended complaint that North Carolina prison authorities had requested his temporary custody pursuant to the Interstate Agreement on Detainers, Va.Code Ann. § 53.1–210, (IAD) and that he wrote to the "Virginia Attorney General's Office" requesting an extradition hearing. Plaintiff further alleges that he requested such a hearing from Officers Carr and Frazier, the former being a non-party to this action, but that on 2 February 1981, Frazier turned him over to North Carolina authorities without a hearing. No further relevant factual allegations are made against any persons mentioned in the complaint and in the amended complaint, whether as parties or otherwise.

However, on 28 December 1981, plaintiff filed an affidavit in opposition to defendants' joint motion for summary judgment in which he averred that on 23 October 1980 he had sent his request for an extradition hearing to Guy W. Horsley, Esquire, an Assistant Attorney General for Virginia. Defendants thereafter filed a second joint motion for summary judgment asserting that each defendant had a "good faith immunity defense." Defendants agreed that plaintiff's transfer to North Carolina au-

thorities occurred eleven days after, and in the absence of a hearing prescribed by, the Supreme Court decision in *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). *Cuyler* established that plaintiff had a right to an extradition hearing under the IAD. Nevertheless, defendants asserted that any omissions on their part were based on their good faith belief that plaintiff was not entitled to a hearing. On this record I granted defendants' second joint motion for summary judgment on 24 June 1982.

The Fourth Circuit reversed the decision and remanded the case for further proceedings. *Arebaugh v. Dalton*, 730 F.2d 970 (4th Cir.1984). The matter was then referred to a United States Magistrate for an evidentiary hearing pursuant to the mandate and to 28 U.S.C. § 636(b)(1)(B). The magistrate submitted his proposed opinion to which the plaintiff filed timely objections. The proceedings have been transcribed and the Court will consider the record *de novo*. See *Orpiano v. Johnson*, 687 F.2d 44, 47–48 (4th Cir.1982).

This Court has experienced puzzlement in carrying out the mandate of the Fourth Circuit primarily because of the statements in the opinion that:

There is no evidence before us demonstrating whether the defendants actually knew or should have known, by February 2, 1981, of the *Cuyler v. Adams* decision. Obviously the office of the Commonwealth's Attorney General, called upon regularly to represent the agency in which the defendants served, had at the least a responsibility currently to keep up to date in the legal area in which the case of *Cuyler v. Adams* fell. To escape liability, the defendants, with the burden of proof reposing on them, had the responsibility to demonstrate that there existed a good faith explanation either for the failure of those responsible to know of the decision in *Cuyler v. Adams*, or, if those responsible

---

1. Plaintiff added the phrase, "et al." to his named parties. The addition of the phrase did not, of course, have the effect of permitting the action to continue against unnamed and unserved defendants. *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir.1980).

were in fact aware of the decision, for the subsequent failure to communicate that knowledge to the prison officials.

The fact is that actual damages may be impossible for Arebaugh to prove. It is unlikely that the conviction in North Carolina happened in a trial improperly permitted to go forward, or led to an unmerited conviction. Nevertheless, at least nominal damages were recoverable. *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed. 252 (1977). That sufficed to defeat an entry of summary judgment.

*Arebaugh v. Dalton*, 730 F.2d 970, 972 (4th Cir.1984). This Court had granted summary judgment to *all* defendants on grounds that *each* had at least good faith immunity. The panel opinion reversed, implying liability for *all* defendants [2] because good faith immunity is applicable to *none*.

A literal reading of the opinion would preclude each of the defendants from asserting an individual defense and would obscure the requirement that plaintiff prove the liability of each defendant by a preponderance of the evidence. *E.g. Landman v. Royster*, 333 F.Supp. 621, 637 (E.D. Va.1971). In effect, such an interpretation of the opinion would establish a *per se* liability rule that once a party shows he has suffered a deprivation of federal rights, anyone who might have prevented the deprivation will be liable for damages. This Court does not believe such was the intent of the panel decision.

■ Liability under § 1983 has always been personal in nature. *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). Vicarious liability has been rejected in the absence of special circumstances. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). Each defendant is entitled to have his case considered individually. See *Rizzo v. Goode*, 423 U.S. 362, 371–72, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

A further troubling aspect of the panel's opinion is contained within the above-quoted excerpt that:

> To escape liability, the defendants, with the burden of proof reposing on them, had the responsibility to demonstrate that there existed a good faith explanation either for the failure of those responsible to know of the decision in *Cuyler v. Adams*, or, if those responsible were in fact aware of the decision, for the subsequent failure to communicate that knowledge to the prison officials.

*Arebaugh*, 730 F.2d at 972.

An inference to be drawn from this analysis is that a defendant officer will be required to prove not only that he was unaware of a change in the law, but that "those responsible" were also unaware of it, or, if aware of it, "those responsible" had a good reason for not communicating it to the defendant officer. The procedural and evidentiary problems which may result from this reverse *respondeat superior* doctrine are not clear.

For example, line officers may soon come to believe that their immediate protection from suit will be simply to disregard orders challenged by inmates. One can imagine the chaos which would follow. Or, perhaps, if an officer obeys the order, he might name his superiors and all others "responsible" as third-party defendants once suit is filed. But even if those responsible be shown to be derelict, surely the Court did not intend that a good faith defense might in all instances be defeated because of negligence by someone over whom the defendant officer had no control.

There is yet another problem area. Recognizing the time lapse between the handing down of *Cuyler* and the handing over of *Arebaugh*, the panel opinion directs an inquiry as to why there was a delay in implementing *Cuyler*. In this regard, the panel cites but dismisses *Harris v. Young*, 718 F.2d 620 (4th Cir.1983) as an unpublished, and therefore non-binding, opinion.

2. The panel opinion refers to "the defendants" as a group. No attempt was made to identify

and assess the liability of each separately.

*Arebaugh,* 730 F.2d at 972–73. The opinion is published; I presume it is binding. In this conflict, it is not clear how I should treat the holding in *Harris* that some lapse of time can reasonably be expected. Under the *Harris* analysis I would have assumed a plaintiff would have the burden of proving unreasonable delay. The panel opinion in this case suggests to me that defendants have the burden of explaining their failure to react without delay.

Each of these problems must be confronted with an understanding of the posture of the case when it was before the Fourth Circuit. All that was considered by that Court was the general issue of whether "the defendants" were entitled to summary judgment. The decision was that summary judgment was inappropriate under the facts necessarily assumed in the then posture of the case. This Court must decide the case on remand upon the facts now established by the evidence as they are governed by the mandate and by settled principles of law.

■ Two of "the defendants" are the Governor and the Attorney General of Virginia. They are so named in the caption of the complaint but plaintiff has made no factual allegation of any sort in the original or amended complaint or in the summary judgment proceedings concerning them.[3] The Court is aware of no *per se* theory of liability upon which a plaintiff, alleging no misconduct on a defendant's part, can nevertheless prevail against him. Nor are these two defendants subject to liability under a theory of *respondeat superior. Monell,* 436 U.S. at 691–95, 98 S.Ct. at 2036–38. *Rizzo v. Goode,* 423 U.S. at 371, 96 S.Ct. at 604. Assuming it be claimed, as I believe the panel assumed, that either the Attorney General or the Governor was the party responsible for failing to provide

plaintiff with a *Cuyler* hearing, it becomes necessary to examine whether they must then be dismissed under some immunity doctrine, as they claim.[4]

The absolute immunity of judicial officers and prosecutors from suit for damages under .§ 1983 has long been recognized. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978) (judicial immunity); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutorial immunity). In a similar manner, absolute immunity has been accorded to certain quasi-judicial officers for acts done in the exercise of their judicial functions. *Douglas v. Muncy,* 570 F.2d 499, 501 (4th Cir.1978) (parole and probation officers).

■ Moreover, even though not associated with "the judiciary," officials who perform "judicial functions" may be accorded absolute immunity from even nominal damages. *See Ward v. Johnson,* 690 F.2d 1098 (4th Cir.1982) (en banc) *rev'g* 667 F.2d 1126 (4th Cir.1981). To determine the degree and type of immunity to be accorded governmental officials, the courts must look to the function they are performing, not to the title of their job. *Consumers Union of United States v. American Bar Ass'n,* 470 F.Supp. 1055, 1064 (E.D.Va.1979) (dissenting opinion), *vacated sub nom. Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). *See also Barr v. Matteo,* 360 U.S. 564, 573–74, 79 S.Ct. 1335, 1340–41, 3 L.Ed.2d 1434 (1959).

■ Matters of extradition are constitutionally controlled by article IV, section 2, clause 2, of the United States Constitution. They are statutorily controlled by the Uniform Criminal Extradition Act, Va.Code

---

**3.** Though commenced pro se, this action is not now a *pro se* action. *Gordon v. Leeke,* 574 F.2d 1147 (4th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), does not apply.

**4.** Neither defendant has raised the defense of absolute immunity. However, it is clear that the Court may do so *sua sponte.* See *Consumers Union of United States v. American Bar Ass'n,*

470 F.Supp. 1055, 1071 (E.D.Va.1979) (dissenting opinion), *vacated on other grounds sub nom. Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Further, a failure to raise such a defense is understandable when it is remembered that the complaint fails to assert a factual claim against these defendants.

Ann. §§ 19.2–85 to –118 (Repl.Vol.1983) and the Interstate Agreement on Detainers, Va.Code Ann. § 53.1–210 (Repl.Vol. 1982).[5] The basic purpose of the Extradition Clause of the Constitution is "to serve the judiciary." *Smith v. Idaho,* 373 F.2d 149, 155 (9th Cir.1967). While the Constitution mandates that a fugitive in one State "shall" be returned to the demanding State, the governor of the asylum State must make factual findings and legal conclusions following specific inquiries prior to granting extradition. First, he must determine whether the accused has been charged with a crime under the laws of the demanding State and, second, whether the accused was within the demanding State at the time of the offense. The former is generally a question of law but it may be a question of fact. The latter is generally a question of fact. *Smith v. Idaho,* 373 F.2d at 155; *United States ex rel. Silver v. O'Brien,* 138 F.2d 217, 218 (7th Cir.1943), *cert. denied,* 321 U.S. 766, 64 S.Ct. 522, 88 L.Ed.2d 1062 (1944). *See Pierce v. Creecy,* 210 U.S. 387, 28 S.Ct. 714, 52 L.Ed. 1113 (1908); *Wirth v. Surles,* 562 F.2d 319, 322 (4th Cir.1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978).

▇▇ The governor's factual determination may not be set aside unless it appears "conclusively" that the accused "could not be a fugitive." *Brewer v. Goff,* 138 F.2d 710, 712 (10th Cir.1943). Thus, "once the governor of the asylum state has acted on a requisition for extradition based on the demanding state's judicial determination that probable cause existed, no further judicial inquiry may be had on that issue in the asylum state." *Michigan v. Doran,* 439 U.S. 282, 290, 99 S.Ct. 530, 536, 58 L.Ed.2d 521 (1978). In other words, when the governor of an asylum State acts on an extradition request he performs a judicial function. Accordingly, he would be entitled to absolute immunity in carrying out this function.

▇▇ It is not asserted in the amended complaint or the summary judgment proceedings that the Governor did or failed to do anything in the instant case. The most that could be claimed is that he failed properly to fulfill his extradition role, essential-

---

5. Article IV, section 2, clause 2 of the United States Constitution provides:

A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.

The mandate of this constitutional provision is dealt with in Virginia by two separate, yet interrelated, statutory procedures.

The Uniform Criminal Extradition Act (UCEA), adopted by 48 States, Puerto Rico, and the Virgin Islands and codified in Virginia at Va.Code Ann. §§ 19.2–85 to –118 (Repl.Vol. 1983), establishes procedures for the transfer of a person who has criminal charges pending against him in another State. The UCEA has provisions covering both individuals wanted who are at liberty and those who are prisoners of the asylum State. The UCEA provides for a hearing before the individual is transferred to another jurisdiction. See Va.Code Ann. § 19.2–95. The power to grant extradition under the UCEA is established in the governor of the asylum State.

The Interstate Agreement on Detainers (IAD), adopted by 48 States, the District of Columbia, and the United States and codified in Virginia at

Va.Code Ann. § 53.1–210 (Repl.Vol.1982), establishes procedures for the transfer only of persons wanted in another State who are prisoners of the asylum State. Under the IAD the transfer may be initiated by the requesting State or by the prisoner. When a prisoner requests a transfer, he waives his right to a pre-transfer hearing. Under the United States Supreme Court decision in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), however, when a State seeks involuntarily to obtain a prisoner, the prisoner must be afforded by the asylum State a pre-transfer hearing as provided under the UCEA.

Thus, the constitutional provision, standing alone, constitutes a requirement for a response by an asylum State to an extradition request from another State. The UCEA establishes procedures for the implementation of this constitutional requirement. The IAD deals only with the transfer of persons who are prisoners of the asylum State at the time their presence is requested in another State. This case involves claims made by plaintiff, a prisoner of Virginia, that he was denied Due Process in an IAD request from North Carolina. Since the case involves an involuntary transfer, the UCEA-required hearing, per *Cuyler,* was essential to a proper transfer.

ly judicial in nature.[6] If this be the claim, he is absolutely immune.

Similarly, the only function of an attorney general, in extradition proceedings, is to assist the governor in determining whether extradition ought to be granted. Va.Code Ann. § 19.2–88. In this sense, he is entitled to absolute immunity because of the quasi-judicial function he is performing. *Douglas*, 570 F.2d at 501. If it be deemed that his duty in this connection be that of an advocate, he is entitled to the absolute immunity accorded public prosecutors. *Imbler*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128. As noted, it is not alleged in the amended complaint or asserted in the summary judgment proceedings that the Attorney General did or failed to do anything.

Assuming, nevertheless, that the Governor and Attorney General of Virginia have breached some duty in the contemplation of the panel, though none has been alleged in the complaint, asserted in the proceedings on defendants' motion for summary judgment, nor proved at the evidentiary hearing, and assuming that such a duty exists under the statutes, and assuming either one or both defendants were derelict in their statutory duties, they are, nevertheless, entitled to absolute immunity from damages. Accordingly, defendant Governor John Dalton and defendant Attorney General J. Marshall Coleman will be dismissed as parties defendant.

In order to determine the liability of the remaining defendants further consideration of the evidence adduced before the magistrate on remand is necessary. That evidence establishes that plaintiff had been incarcerated in the Virginia Department of Corrections during 1980–1981. On 5 September 1980, North Carolina authorities requested temporary custody of plaintiff pursuant to the IAD. On 20 October 1980, plaintiff sent a request to Guy Horsley, the Virginia Administrator of the IAD, for an extradition hearing. Mr. Horsley, believing, pre-*Cuyler,* that no extradition hearing was available under the IAD, forwarded the letter to another assistant attorney general on the mistaken belief that the request appeared to be related to a then-pending habeas corpus action being handled by that assistant.

The request by North Carolina authorities continued to be processed; Mr. Horsley, as well as the Department of Corrections, was advised that North Carolina authorities would effect plaintiff's transfer on 19 January 1981. Nothing further was heard from plaintiff about a hearing by any of the parties to this action prior to 2 February 1981. As far as Mr. Horsley was concerned, plaintiff had been transferred on 19 January 1981, as scheduled, without incident. On 21 January 1981, the Supreme Court announced its decision in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), establishing that State prisoners have a right to a hearing prior to their transfer out-of-State under the IAD.

Mr. Horsley became aware of the holding in *Cuyler* within eight to ten days of its publication. He promptly notified Virginia Matney, the person who actually processed detainer forms with the Department of Corrections. Specifically, Mr. Horsley advised her to "freeze" all pending processing until procedures could be implemented to comply with *Cuyler.* Miss Matney, pursuant to this instruction, notified the units which her records reflected contained inmates who were pending transfer. She did not notify the unit wherein plaintiff was confined because, as far as she could determine, he had already been transferred on 19 January 1981, and thus his case was not, as she understood it, "pending" at the time *Cuyler* was handed down.

---

**6.** Although a suit against a judicial officer for malfeasance in his judicial duties may be distinguished from a claim alleging nonfeasance of those duties, this is a distinction without a significant difference in the context of the doctrine of absolute judicial immunity. See *Rheuark v.* *Shaw,* 628 F.2d 297, 303 (5th Cir.), *cert. denied,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1980) (trial judge's two year delay in issuing an order to prepare a trial transcript necessary for plaintiff to pursue his appeal is protected by absolute immunity).

Unfortunately, the North Carolina authorities had not taken custody of plaintiff on the planned date. Rather, they arrived on 2 February 1981, eleven days after the *Cuyler* decision had been rendered. Plaintiff objected to his transfer and asked Sgt. Frazier, a correctional sergeant and guard at the institution wherein he was confined, to grant him a hearing. Sgt. Frazier declined to do so. Sgt. Frazier was a line officer, and he had no knowledge of the *Cuyler* decision. There is no evidence that Sgt. Frazier had the authority to grant a hearing had he been knowledgeable of the decision and had he been so inclined.

 According to the evidence in the case, plaintiff's post-*Cuyler* transfer was effected without the knowledge of the Attorney General, the Governor, or any of the other defendants, with the exception of Sgt. Frazier. Sgt. Frazier had no actual knowledge of the *Cuyler* decision, and there is no reason why he should have known of the decision at the time of plaintiff's transfer. He had facially valid orders to transfer plaintiff to North Carolina authorities, and he relied on those orders in good faith. He is entitled to good faith immunity from damages. *See Procunier v. Navarette*, 434 U.S. 555, 562–63, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978); *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir.1981).

The decision of the Fourth Circuit in remanding this case was critical of the lack of explanation by the Attorney General for the delay in implementing the *Cuyler* decision in the Virginia prison system, 730 F.2d at 972. Under the statutes implementing the IAD, the Attorney General is to designate the officer who will serve as Central Administrator of the Agreement. See Va. Code Ann. § 53.1–215. The Attorney General fulfilled this obligation when he appointed Guy Horsley to that post. Mr.

Horsley's appointment to this responsible position was not shown to be a reckless act on the part of the Attorney General.

Article VII of the Agreement, as adopted pursuant to Va.Code Ann. § 53.1–210, provides:

> Each state party to this agreement shall designate an officer who, acting jointly with like officers of other party states, shall promulgate rules and regulations to carry out more effectively the terms and provisions of this agreement and who shall provide, within and without the state, information necessary to the effective operation of the agreement.

The officer appointed to carry out those functions was, according to the evidence, Mr. Horsley. Thus, the duty to "provide, within ... the state, information necessary" concerning changes in interpretations of the IAD lay not with the Attorney General, but with Mr. Horsley.

But Mr. Horsley is not now, nor has he ever been a party to this action. Nor has Miss Matney, the person within the Department of Corrections who was responsible for handling detainer matters, been named or treated as a party defendant. Although plaintiff named T.D. Hutto, Director of the Department of Corrections, Julian Pugh, Chief of the Records and Transportation Unit for the Virginia Department of Corrections, and J.E. Collins, Superintendent of Fairfax Correctional Unit # 30, as parties defendant in this action, plaintiff has neither alleged nor proved anything which would indicate liability on their behalf. Simply put, plaintiff, if he has a claim, has sued the wrong person or persons.[7]

I have reviewed the record, *de novo*, and I have reached certain conclusions different from those of the United States Magis-

---

7. Plaintiff has filed no motion after the evidentiary hearing or post-discovery to amend the complaint or to add parties as he might have pursuant to Fed.R.Civ.P. 15. While the Court recognizes its duty to assist *pro se* litigants, *see Gordon v. Leeke*, 574 F.2d 1147 (4th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978), plaintiff has been represented by an attorney on appeal from the order granting summary judgment and since remand. Presumably counsel read the amended complaint and was satisfied that it set forth the claims which his client desired to press. *Eakins v. Reed*, 710 F.2d 184 (4th Cir.1983), cautions against the judge becoming an adviser to either side.

trate,[8] the proposed opinion of the United States Magistrate will be rejected insofar as it differs and this opinion is adopted as the opinion of the Court. The objections raised by the plaintiff to the magistrate's opinion are overruled. Having canvassed the entire proceeding, I am satisfied that the action should be dismissed for the reasons set forth hereinabove.

An appropriate judgment shall issue.

And it is so ORDERED.

---

8. As to the failure of the plaintiff to state or prove liability on any ground as to defendants, I, of course, concur with the magistrate's view.