**Douglas LaCHANCE, Plaintiff,**

v.

**Janet RENO, in her capacity as Attorney General of the United States, and the United States Parole Commission, Defendants.**

**No. 92 Civ. 8870 (LLS).**

United States District Court,
S.D. New York.

June 7, 1993.

**30**

Kenneth A. Caruso, Shearman & Sterling, New York City, for plaintiff.

Allan N. Taffet, U.S. Attorney's Office, S.D.N.Y., New York City, for defendants.

## OPINION AND ORDER

STANTON, District Judge.

Douglas LaChance petitions for a writ of habeas corpus, arguing that the United States Parole Commission improperly forfeited the time he served on parole.

## BACKGROUND

In 1981, LaChance commenced service of a 12–year term for extortion, racketeering and tax evasion. At the time of his sentencing, LaChance denied alcohol or opiate abuse. (Declaration of United States Probation Officer Eileen Kelly ¶ 4). After serving nearly five years, on December 20, 1985 he was released to parole supervision.

While on parole LaChance pleaded guilty in Cape May, New Jersey in 1988 to careless driving and refusing to take a breath test. Although he could have been jailed for 15 days, he was fined $300. Believing this incident was "an isolated one of poor judgment," the United States Parole Commission (the "Commission") did not revoke LaChance's parole, but instead sent him a letter of reprimand.[1] (Kelly Decl. ¶ 8).

In December 1991, New York State law enforcement agents advised LaChance's probation officer that LaChance had been identified by a confidential informant as a cocaine supplier and possible user. When confronted with news of the informant's tip, LaChance denied any involvement in drug purchases or drug use. On July 9th, July 28th, August 18th and September 2nd of 1992, however, LaChance tested positive for cocaine use. He agreed to seek drug treatment, but failed to keep required appointments.

In October 1992, LaChance was served with a summons to appear at a hearing concerning charges that he violated the terms of his parole. LaChance, who had in the meantime entered Conifer Park Mediplex, a detoxification and long-term treatment agency in Conifer Park, New York, failed to appear at the hearing. Later that month, his probation officer received information that LaChance had left the Conifer Park facility: on October 22, he was arrested and was re-imprisoned for violating the conditions of his parole. According to LaChance's probation officer, at

---

1. The letter provides:

The purpose of this letter is to inform you that the US Parole Commission has received information concerning your non-compliance with the conditions of your parole release.

Official records indicate that you were paroled on 12/20/85, at which time you signed the Conditions of Release indicating that you understood them and would abide by them when you were released. The Commission has been informed that you are in violation of these conditions; specifically:

(1) You shall not violate any law as evidenced by your guilty plea before the Cape May, New Jersey Municipal Court on 1/12/88 to the charges of Careless Driving and Refusal to Submit to a Breath Test.

Violation of the conditions of release may result in the issuance of a warrant for your arrest. Your disregard of the rules and regulations set forth on your release certificate and by your US Probation Officer will no longer be tolerated. USPO Schramm has requested that we not issue a warrant at this time but rather address to you an Official Letter of Reprimand. The Commission has reviewed your case and has agreed with your Probation Officer. However, you are officially notified that continued disrespect and non-compliance with your condition of release will result in your arrest and return to federal custody. Your Probation Officer has received a copy of this letter and will inform us immediately should any further violations occur.

his subsequent revocation hearing LaChance acknowledged that he had been using cocaine for fifteen years. (Kelly Decl. ¶ 11). In papers on this application, LaChance acknowledges that during the 1970s and while on parole he used cocaine "occasionally." (Reply Affidavit of Douglas LaChance sworn to June 3, 1993 ¶ 1).

On January 7, 1993, the Commission adopted a hearing officer's recommendations to revoke LaChance's parole, forfeit the entire time he had spent on parole, and thus extend his release date from February 18, 1993 to the year 2000. The Commission's action imposes eight months of imprisonment to be followed by parole supervision with a special drug aftercare condition.[2] On February 18, 1993, the expiration of his original maximum term, this court directed that LaChance be released on bail pending the outcome of his administrative appeal. *LaChance v. Barr*, 812 F.Supp. 436 (S.D.N.Y. 1993). On March 3, 1993, the Commission affirmed its prior decision. This application for a writ of habeas corpus, more fully briefed and factually supported than the application for bail, followed.

The Commission charges LaChance with his positive test for cocaine, refusal to participate in a drug program, failure to appear at a hearing/interview, and leaving the district without permission (all of which occurred in 1992) and the 1988 conviction described above. Of those violations, only the 1988 conviction could serve as a basis for forfeiting LaChance's whole time of almost seven years on parole, *see* 18 U.S.C. § 4210(b)(2). LaChance asserts that this forfeiture violates due process.

## DISCUSSION

■ LaChance argues that the Commission has no power to extend its jurisdiction over him past his original maximum term on the basis of the 1988 conviction. He contends that under 18 U.S.C. § 4210(b)[3] the Commission has only the power to determine whether an unexpired parole term should run concurrently or consecutively with the sentence imposed for a new offense. He argues that because he was not imprisoned for his 1988 conviction, the Commission may not hold him past his maximum term. He claims that the regulation codified in 28 C.F.R. § 2.52(c)(2),[4] which does not require an "ac-

2. LaChance already has served roughly four months of the eight-month prison term. He served from October 22, 1992, when he was reimprisoned for violating the conditions of his parole, until February 18, 1993, when he was released on bail pending his administrative appeal.

3. 18 U.S.C. § 4210(b)(2) provides:
    (b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that (2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense.

4. 28 C.F.R. § 2.52(c)(2) provides:
    (c) A parolee whose release is revoked by the Commission will receive credit on service of his sentence for time spent under supervision, except as provided below:
    (2) It is the Commission's interpretation of 18 U.S.C. 4210(b)(2) that, if a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence. An actual term of confinement or imprisonment need not have been imposed for such conviction; it suffices that the statute under which the parolee was convicted permits the trial court to impose any term of confinement or imprisonment in any penal facility.
    (The "warrant" referred to in the first sentence quoted above is the warrant for revocation of his parole, not the warrant for his arrest on the new offense. *See Munguia v. United States Parole Commission*, 871 F.2d 517, 521 (5th Cir.1989), *cert. denied*, 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989)).

tual term of confinement or imprisonment" before a conviction may be used to forfeit parole time, is inconsistent with the statute.

In order for the Commission's interpretation of the statute to be valid, "it need only be shown that it is 'sufficiently reasonable.'" *Weeks v. Quinlan,* 838 F.2d 41, 44 (2d Cir.1988) (citations omitted). The interpretation does not have to be "the only reasonable one, or even the one the court would have adopted if the question had initially arisen in a judicial proceeding." *Id.* In *United States ex rel. Del Genio v. United States Bureau of Prisons,* 644 F.2d 585, 588 (7th Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 870, 66 L.Ed.2d 808 (1981), the Court of Appeals for the Seventh Circuit found that § 4210(b) was ambiguous, and that the Commission's interpretation was consistent with the intent of Congress. There are strong indications, in fact, that the drafters intended to treat parole violations punishable by imprisonment, detention or incarceration in any penal facility[5] as grounds for the forfeiture of street time, regardless of whether such a sentence is actually imposed. According to the Conference Report:

> The phrase 'punishable by a term of imprisonment, detention or incarceration in a penal facility' is intended by the Conferees to mean any term of confinement which may be levied upon adjudication of guilt or delinquency and does not include detention prior to adjudication. For example, a person convicted of any offense punishable by even one day of imprisonment would not automatically receive credit toward service of his sentence, even if no sentence of imprisonment was imposed.

H.R.Rep. No. 94–838, 94th Cong., 2d Sess. 31–32 (1976) *reprinted in* U.S.Code Cong. & Admin.News, pp. 335, 364.

Because the Commission's interpretation is a reasonable one consistent with the intent of Congress, LaChance's first ground for relief is denied.

LaChance also argues that even if the Commission has the statutory authority to extend his original maximum term by forfeiting his whole parole time, it lost that authority by waiting too long to act and by misleading him.

■ Revocation of parole after unreasonable delay or under circumstances inherently misleading to the parolee violates due process. *See United States v. Hamilton,* 708 F.2d 1412, 1415 (9th Cir.1983). However, in the absence of "unfair tactics" by the Commission, and as long as the delay does not prejudice a parolee's ability to challenge the earlier violations, it is appropriate for the Commission to assess the "continuing nature" of a parolee's violations before initiating a revocation proceeding. *White v. United States Parole Commission,* 856 F.2d 59, 61 (8th Cir.1988). *See Cortinas v. United States Parole Commission,* 938 F.2d 43, 45 (5th Cir.1991) (parolee's four-year old conviction, previously used to alter the conditions of his parole, could be used as a ground for revocation in light of subsequent violations); *United States v. Rice,* 671 F.2d 455, 458 (11th Cir.1982) (two and a half-year delay). *See also United States v. Shampang,* 987 F.2d 1439, 1443 (9th Cir.1993) (citations omitted):

> Absent prejudice, therefore, a delay motivated by a 'desire to utilize the rehabilitation process rather than abandon it' does not violate due process when the earlier violations are charged along with more recent ones because collectively they show 'that the further attempt at rehabilitation had not succeeded.'

■ Whether the delay between a violation of parole and the initiation of revocation proceedings is unreasonable may depend upon whether there was any deception on the part of the parolee. *United States v. Tyler,* 605 F.2d 851, 853 (5th Cir.1979) (two-year delay unreasonable in the absence of deception). *See also United States v. Sciuto,* 531 F.2d 842, 847 (7th Cir.1976) ("Whether the delay was unreasonable depends upon whether Sciuto deceived the probation officer.").

■ At the time of his sentencing, the Commission had no reason to believe that

---

**5.** *"Penal Facility"* includes a county jail. *See Rose v. J.R. Johnson,* 563 F.Supp. 801, 802 (E.D.Mich.1983) (offense punishable by 90 days in county jail is within the meaning of 18 U.S.C. § 4210(b)(2)).

LaChance was using cocaine. Accordingly, it reasonably concluded that his 1988 conviction for careless driving and refusing to take a breath test was an isolated incident which required only a letter of reprimand. The Commission's reconsideration of that decision in light of the events which took place in 1992 was also reasonable. Given LaChance's four positive tests for cocaine, his acknowledgment of long term use and concealment of cocaine, and his disregard for treatment efforts, the earlier conviction justifiably could be viewed in 1992 as part of a series of parole violations stemming from illegal substance abuse.

■ In its February 11, 1993 decision directing that LaChance be admitted to bail pending the Commission's final determination, this court stated the argument against forfeiture of LaChance's accumulated parole time as follows:

> The contemplated forfeiture of all of La-Chance's parole time, from 1985 to 1992, would impose a second, and much more serious sanction for LaChance's 1988 conviction. It would go far beyond the possible consequences mentioned in the contemporaneous reprimand for that incident, which warned LaChance only that "continued disrespect and non-compliance with your conditions of release will result in your arrest and return to federal custody." Nothing in the letter indicated that the conviction (with its maximum term of fifteen days) might be used over four years later as an excuse for adding almost seven years to his term.
>
> The government's contention that it was appropriate for the Commission to wait and assess the cumulative effect of several violations before forfeiting LaChance's parole time is specious. The Commission may forfeit parole time only on the basis of a conviction which is punishable by a term of imprisonment. *See* 18 U.S.C. § 4210(b). Therefore, while failing a drug test, refusing to get drug treatment, missing an interview and leaving the district are violations which can support a revocation of parole, only LaChance's 1988 conviction could support the forfeiture. Even with his subsequent violations, at some point a

prior conviction upon which the Commission had taken timely action may no longer serve as a basis for forfeiting all of a parolee's street time. Under the circumstances, it appears that LaChance has good grounds for expecting that the National Appeals Board will overturn the Commission's determination.

*LaChance,* 812 F.Supp. at 438–39.

Upon further reflection, further development by the parties of the facts and law, and particularly upon further disclosure of the dimensions of Mr. LaChance's concealment of his continuing abuse of cocaine, the court concludes that its earlier analysis does not adequately address this case. Had Mr. La-Chance's (even then long-standing) abuse of cocaine been known to the Commission at the time of his 1988 conviction, the Commission could have revoked his parole then. As the situation developed thereafter, it would have admitted him to parole again at the appropriate time. It was deprived of its ability to respond flexibly and knowledgeably by Mr. LaChance's continuing concealment of the facts. Had the facts been openly disclosed, Mr. LaChance might well complain that the Commission's failure to take timely action then bars it from doing so now, after delay of many years. In light of his suppression of the facts, that argument is unavailing.

LaChance further argues that the letter of reprimand was misleading because it did not warn him of the possibility of losing his time spent on parole. This circuit, however, does not require notice of the loss of street time: a parole violator automatically forfeits his street time when his parole is revoked on the basis of an offense punishable by imprisonment, detention or incarceration in any penal facility. *D'Amato v. United States Parole Commission,* 837 F.2d 72, 78 (2d Cir.1988); *Miller v. Hadden,* 811 F.2d 743, 747 (2d Cir.1987) ("the denial of credit for the time he had spent on parole was required by published regulation of the Commission").

The letter of reprimand did not suggest that the conviction would never be considered in the future. It specifically warned LaChance that "continued disrespect and non-compliance with your conditions of release will result in your arrest and return to

federal custody. Your Probation Officer has received a copy of this letter and will inform us immediately should any further violations occur." LaChance has not alleged that the lapse of time prejudiced his ability to challenge the earlier violation, or to produce evidence of mitigating circumstances. *See White*, 856 F.2d at 61.

Because the delay was not unreasonable in light of new violations, and the circumstances were not misleading, the Commission's decision to include the 1988 conviction in parole revocation proceedings was not an abuse of discretion.

## CONCLUSION

The clerk of the court is directed to dismiss the petition.

So ordered.