Richard F. KAUFHOLD, Plaintiff,

v.

Edwin W. BRIGHT, Jr., et al., Defendants.

Civ. A. No. 92–0096–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Sept. 30, 1993.

Judgment nunc pro tunc,
Sept. 23, 1993.

---

9. Even prosecutor Kilgore noted that "Mr. Rasnic did cross-examine every witness." (T at 26).

10. *See supra* note 2.

296

Linda Schorsch Jones, Gordon Wallace Poindexter, Jr., Poindexter, Schorsch & Patterson, Waynesboro, VA, for plaintiff.

Richard F. Kaufhold, pro se.

Pamela Anne Sargent, Office of Atty. Gen., Richmond, VA, for defendants.

## ORDER

MICHAEL, District Judge.

Pursuant to a standing order entered in this court on June 30, 1992, this case was referred to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report on September 2, 1993, and on September 10, 1993, the Plaintiff filed Objections to the Report and Recommendation. Said objections having been lodged with this court in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). Since, after *de novo* review of the entire record, this court determines that the objections are without merit, it is this day

### ADJUDGED AND ORDERED

as follows:

1. The objections to the Report and Recommendation of the United States Magistrate Judge are overruled, and said Report,

filed September 2, 1993, shall be, and it hereby is, adopted in its entirety.

2. For the reasons stated in the Magistrate Judge's Report, Defendants' motion for summary judgment shall be, and it hereby is, granted. Plaintiff's motion for summary judgment and motion to supplement shall be, and they hereby are, denied.

3. This case shall be, and it hereby is, dismissed and stricken from the docket of the court.

## REPORT AND RECOMMENDATION

CRIGLER, United States Magistrate Judge.

In this action, plaintiff, a parolee, alleges that state parole officials overstepped their proper authority by impeding his potential employment as a paralegal. Plaintiff Richard F. Kaufhold, *pro se*, invokes 42 U.S.C. §§ 1983 and 1985 against his parole officer, Edwin W. Bright, Jr., and unnamed supervisory defendants within the state parole system. The Hon. James H. Michael, Jr., U.S. District Judge, referred the suit to this court under 28 U.S.C. § 636(b)(1)(B). The complaint asserts that defendant Bright violated Kaufhold's constitutional right to privacy and improperly denied the parolee of his liberty and property interests by interfering with his right to work in his "chosen, lawful profession." Further, plaintiff alleges that certain "unknown employees" of the Virginia Parole Board ("Board") also violated his rights, either through complicity with Bright, or by failing to prevent Bright's interference. Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages. Defendants filed a motion for summary judgment seeking dismissal on the grounds of absolute immunity, and, alternatively, qualified immunity. Plaintiff also has sought summary judgment. In addition, on August 10, 1993, plaintiff by counsel who entered an appearance in the case on August 25, 1993, moved to supplement the complaint and moved for partial summary judgment on the question of liability.

## BACKGROUND

The material facts in the case are not disputed. In 1990, while imprisoned, Kaufhold enrolled in a paralegal correspondence course and completed its initial level. The Board released Kaufhold on parole in 1991, with two special conditions: that he receive mental health counseling; and that he refrain from contacting his ex-wife, the victim of his past crimes. Further conditions were added one month later, requiring the Board's approval either for travel outside Kaufhold's immediate parole district or for his transfer to another district.[1]

Upon his release, Kaufhold spent more than a year unsuccessfully seeking full-time paralegal work, despite officer Bright's repeated demands that the parolee cease to hold himself out as a paralegal. Finally, in 1992, Kaufhold received an offer for employment outside his parole district with a Charlottesville "legal consultant." Kaufhold requested special permission to accept that offer and work in Charlottesville, but the request was denied.[2] At the time, he was under investigation by the state bar for practicing law without a license, a fact known to his parole officer.

The prospective employer in Charlottesville withdrew the job offer, apparently because Bright had informed him of the investigation. When Kaufhold faced formal charges for practicing law without a license, he pled guilty, under an agreement with Bright. The agreement provided that Kaufhold, in addition to pleading guilty, would limit or forego future practice as a paralegal; in return, Bright would not cite the resulting conviction as a parole violation. Kaufhold alleges that, after the conviction, Bright warned him that any attempts at paralegal

---

1. The special conditions of plaintiff's parole were part of a program of heightened supervision. Kaufhold received parole from a sixteen-year sentence for rape, abduction, and statutory burglary. His victim continually voiced her concern to the Parole Board, and reported anonymous harassing calls that she believed Kaufhold made.

2. The employment prospect was with Dexter D. Coffin, III, a former inmate and parole who has established a paralegal office in Charlottesville, Virginia.

work would jeopardize his parole. When a Staunton lawyer offered Kaufhold part-time employment as a legal secretary, Bright notified the attorney of Kaufhold's recent conviction, and suggested that hiring the parolee might violate state bar regulations.[3] As an apparent result, the Staunton offer never materialized.

Defendant Board members, in their motion for summary judgment, plead absolute immunity, as does parole officer Bright. Defendants alternatively assert qualified immunity, arguing that no clear constitutional mandate prohibited their acts or omissions.

The plaintiff's proposed supplemental complaint sets forth acts occurring during the pendency of this litigation and appears also to relate to conduct surrounding the institution and adjudication of parole violation procedures in the state court. Contrary to plaintiff's assertion in the motion to supplement, these allegations do raise new and materially different matters not heretofore pled.

## APPLICABLE LAW

■ The type of immunity available to a defendant in a § 1983 action initially depends upon whether that defendant is sued in an official capacity or a personal capacity. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (unanimous decision). Official capacity suits, on the one hand, provide merely an alternative means of "pleading an action against an entity of which an officer is an agent." *Id.* at 165, 105 S.Ct. at 3104 (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978)). Personal capacity suits, on the other hand, seek personal liability for a government official's actions taken under color of state law. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)). In addition to determining which type of immunity may apply, the distinction between official and personal capacity suits generates differing standards of liability under § 1983.

■ An official capacity action requires more than a showing of personal liability: The relevant entity must itself have been a "moving force" behind the alleged deprivation. *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037). The only immunity applicable to an official capacity suit is the involved entity's sovereign immunity, such as that provided by the Eleventh Amendment. *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Additionally, reliance on existing law is no defense in an official capacity action. *Id.* at 167, 105 S.Ct. at 3105. A personal capacity action, however, requires a showing that the defendant official caused a deprivation of a federal right while acting under color of state law. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In a personal capacity suit, a defendant may avoid the threat of liability by invoking either absolute or qualified immunity.

■ Under *Butz v. Economou*, a defendant bears the burden of proving absolute immunity. 438 U.S. 478, 506, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978). Parole board members, however, generally receive absolute immunity. *See Douglas v. Muncy*, 570 F.2d 499 (4th Cir.1978); *Pope v. Chew*, 521 F.2d 400 (4th Cir.1975). *Douglas* has been interpreted also to accord absolute immunity to parole officers, *see Arebaugh v. Dalton*, 600 F.Supp. 1345, 1349 (E.D.Va.1985) (citing *Douglas*, 570 F.2d at 501), although this court does not construe *Douglas* so broadly. Notably, however, *Douglas* does cite with approval *Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970), which states that "officers of government whose duties are related to the judicial process are immune from liability for damages under section 1983 for conduct in the performance of their official duties." *Id.* at 319 (citations omitted). Moreover, the Fourth Circuit stated recently that "[g]overnment officials who are performing their official duties are generally shielded from liability for civil damages." *Swanson v. Powers*, 937 F.2d 965, 967 (4th Cir.1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800,

---

**3.** The position was with John Appleford, Esq. a lawyer who has been court-appointed institution-al attorney at Staunton Correctional Center and the Augusta Correctional Center.

818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ Qualified immunity protects public officials from liability for money damages when their challenged conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow*, 457 U.S. at 815–18, 102 S.Ct. at 2736–38. Even when immunity does apply, however, an official can still be subject to declaratory or injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). Further, qualified immunity is not available to a defendant in an official capacity suit. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Hughes v. Blankenship*, 672 F.2d 403 (4th Cir.1982). Nonetheless, where a § 1983 actions seeks personal liability, qualified immunity can obtain for defendants in those suits. *See Graham*, 473 U.S. at 167–69, 105 S.Ct. at 3105–07; *Monell*, 436 U.S. at 690–95, 98 S.Ct. at 2035–38.

■ Summary judgment is a "particularly appropriate" stage at which to determine whether qualified immunity shields a defendant from suit. *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir.1991); *Harris v. Young*, 718 F.2d 620 (4th Cir.1983). In *Harlow* the Supreme Court set forth an objective test for qualified immunity to "avoid excessive disruption of government" and to accommodate "many insubstantial claims." The Court explained:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate future legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Additionally, a plaintiff clearly fails the *Harlow* test when unable to establish a violation of any constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).

■ Thus, when qualified immunity is at issue, the court should not allow a suit to proceed to trial without first examining the sufficiency of the evidence. *See Siegert*, 500 U.S. at ——, 111 S.Ct. at 1793–94. To analyze a claim of qualified immunity, a court should: (1) identify the specific constitutional right implicated; (2) determine that the right was clearly established at the time of the alleged violation; and (3) consider whether a reasonable person in the official's position would have known the conduct would violate that right. *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir.1990) (Phillips, J., concurring); *see also Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir.1992). The first two components of the tripartite *Collinson* test "present pure questions of law"; the third may require factual determinations of the defendant's conduct and its circumstances, but ultimately "is also a matter of law." *Collinson*, 895 F.2d at 998 (Phillips, J., concurring). Particularly, under the third prong,

> [w]here the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective reasonableness of his actions, the plaintiff may avoid summary judgment only by pointing to specific evidence that the officials' actions were improperly motivated.

*Id.* at 1002 (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.1988)). *Accord Siegert*, 500 U.S. ——, 111 S.Ct. at 1793 (finding error when the sufficiency of plaintiff's allegations of malice was not examined at summary judgment).

### FINDINGS

■ Prong one of *Collinson* requires that the allegedly infringed right be identified. The right asserted by plaintiff is essentially an unfettered ability as a parolee to pursue whatever lawful employment he may choose. In support of his assertion, he points to Virginia's picketing and right to work statute, Va.Code Ann. § 40.1–53 (Michie 1990). That statute is inapposite on several levels of application. First, its "plain purpose" is to protect the right to work from infringement "by the use of force, threats, violence, intimidation, or insulting words."

*McWhorter v. Commonwealth,* 191 Va. 857, 865–66, 63 S.E.2d 20, 24 (1951). "Its prohibition is within a narrow scope." *Id.* Second, Code § 40.1–53 is a quasi-criminal statute, and it does not provide a basis for civil damages, other than injunctive relief. *Crawford v. United Steelworkers, AFL–CIO,* 230 Va. 217, 235, 335 S.E.2d 828, 839 (1985) ("We will not read more into the statute than is written."). Third, a violation of state law alone does not provide sufficient grounds for a § 1983 claim; rather, the violation must rise to a constitutional level. *Clark v. Link,* 855 F.2d 156, 161 (4th Cir.1988). In short, plaintiff invokes an inapplicable state law provision in an attempt to bootstrap himself into the province of § 1983. Whatever federal right the complaint may implicate, it certainly is not one under the Virginia right to work statute.

■■■■ Plaintiff also claims that the alleged interference impinged on his right to privacy and on his liberty and property interests. Those constitutional precepts may have been extended by some courts to protect ordinary citizens in normal circumstances from governmental supervision over their employment choices; but whether the rights of privacy and due process apply to parolees as they do to ordinary citizens is an entirely different matter. Parolees do not enjoy "the absolute liberty to which every citizen is entitled," but only "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972). Parole (as the Supreme Court has said of probation) is simply part of "a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." *See Griffin v. Wisconsin,* 483 U.S. 868, 874, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987). Parolees, just as probationers, experience diminished privacy because their supervision promotes genuine rehabilitation and community protection. *See id.* at 875, 107 S.Ct. at 3169. The diminution of their liberty is not, however, without limit. *Id.* The question is whether Kaufhold's constitutional rights, though limited, nonetheless entitled him to choose whatever employment he wished.

■■■■ This court finds that aside from whatever other restrictions a parole board may impose, a parolee has a protected right in legitimate employment. The parameters of legitimacy, however, are not fixed, and decisions about what job may or may not be appropriate for a given parolee should be committed to the Parole Board. Nevertheless, such decisions should not be left to the unfettered discretion of parole officers. To the extent there is evidence they were in this case, the court cannot say as a matter of law that no protected interest is involved. Nevertheless, the inquiry does not end at this point, because even if the right does exist, the court must determine the degree to which the right was established at the time of the alleged events.

Prong two of *Collinson* requires that the right must have been clearly established at the time of the alleged violation. In this court's view, it was not. Even now the court cannot unqualifiedly say that the Constitution compels a parolee's unrestricted access to any chosen occupation. Rather, the Supreme Court's pronouncements on parolees' rights militate against that conclusion. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972) (distinguishing a parolee's "conditional liberty" from an ordinary citizen's "absolute liberty"). *Cf. Griffin v. Wisconsin,* 483 U.S. 868, 875, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 (1987) (noting that supervision of probationers "is a 'special need' of the State permitting [an otherwise unconstitutional] degree of impingement upon privacy.") There simply has been no such mandate for the asserted right at issue; much less has the right been clearly established.

Prong three of *Collinson* requires a determination that a reasonable person in Bright's situation would have known of the right. Because the asserted right was not clearly established at the time of the alleged violation, the court need not reach the final portion of the inquiry. For purposes of clarity, however, the analysis is worthwhile.

Parole officers and their superiors must have some latitude in their supervision of parolees if parole itself is to have any mean-

 

ingful rehabilitative results without undue risk to the community. Officer Bright knew initially that Kaufhold was under investigation for practicing law without a license. From the facts facing Bright at the time, the parolee was at least treading close to—if not overstepping—the line of permissible conduct. Kaufhold, when charged with the unauthorized practice of law, pled guilty under an informal plea agreement with Bright. That he took somewhat of a hard-line stance in opposing plaintiff's engaging in any activities closely associated with the practice of law is not sufficient to demonstrate malice or ill will. Rather, it is evidence that the parole officer simply was trying to do his job in an otherwise novel category of supervision.

■ It is equally clear that the board is either qualifiedly or absolutely immune under the circumstances presented here. If the plaintiff is asserting that the conduct of the "unknown" Board members was adjudicatory, which plaintiff does not appear to be asserting, absolute immunity attaches. If, on the other hand, plaintiff seeks to recover on the basis of supervisory liability under § 1983, i.e., that these defendants either participated in or authorized the conduct, the same protection extended Bright should attach to these unknown defendants.

In addition, this court is of the view that plaintiff's motion to supplement comes too late in the summary judgment process. It amounts to little more than an attempt to add a new claim for relief on facts not heretofore plead. It is this court's view that the motion should be denied.[4]

## CONCLUSION

For the reasons previously set forth, it is

## RECOMMENDED

that defendants' motion for summary judgment be granted, and that plaintiff's motion for summary judgment and his motion to supplement be denied. This action should be dismissed from the docket of the court.

---

4. Any claim arising during the pendency of this case could be brought by separate action should plaintiff elect to do so within the applicable peri-

The Clerk is directed immediately to transmit the record in this case to the Hon. James H. Michael, Jr., U.S. District Judge. Both sides are reminded that Rule 72(b) entitles them to note any objections they may have to this Report and Recommendation within ten days of its entry. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become preclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Sept. 2, 1993.

od of limitation. Furthermore, any claim by plaintiff for injunctive relief has become moot, as he as become employed in his chosen field.