**John DOE, Plaintiff,**

v.

**William H. FAUVER, as Commissioner of Correction of the State of New Jersey; Victor D'Ilio, as Executive Director of the Bureau of Parole of the State of New Jersey; "Jane Roe," a fictitious name, as the assigned Parole Officer for "John Doe," Defendants.**

No. Civ.A. 96–6099.

United States District Court,
D. New Jersey.

Dec. 29, 1997.

William H. Buckman, Moorestown, NJ, for Plaintiff.

James D. Harris, Deputy Attorney General, Office of Attorney General of New Jersey, Trenton, NJ, for Defendants.

## *OPINION*

RODRIGUEZ, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction to prevent the New Jersey Parole Board from informing his employer of his status as a parolee and the nature of his crime. After oral arguments were heard a temporary restraining order was granted preventing defendants from notifying plaintiff's employer. The parties also agreed to abide by the terms of the temporary restraining until this court determined plaintiff's motion for injunctive relief.

### *I.  BACKGROUND*

In accordance with a plea agreement, plaintiff was convicted in March 1992 of aggravated sexual assault for digital penetration of a minor, and was sentenced to ten years state imprisonment with parole eligibility. In May 1994, after serving approximately two years of his sentence, plaintiff was paroled subject to certain parole requirements which were subsequently modified on February 7, 1995. Pursuant to the parole modification, plaintiff was informed of the following conditions [1]:

> You shall not initiate, establish or maintain contact with any minor nor attempt to do so, nor shall you reside in the same residence with any minor without the express approval of your parole officer. The following circumstances are excepted from this Special Condition:
>
> 1. When the minor is engaged in a lawful commercial or business activity, you may engage in the lawful commercial or business activity with the minor, provided the activity takes place in an area open to the public view; or
>
> 2. When the minor is in the physical presence of his/her parent and/or legal guardian.

Plaintiff's record indicates that, since his release, he has satisfactorily performed the obligations dictated by his parole status. He completed both a mandatory counseling program and the Drug Free Outpatient Rehabilitation Program, and paid his fines. In addition, on December 23, 1996, pursuant to the New Jersey Registration and Community Notification Laws ("Megan's Law") or N.J.Stat.Ann. 2C:7–1 et seq.,[2] a New Jersey Superior Court assigned plaintiff a Tier Two Designation requiring "no notification to any school or community organization." [3] Plaintiff was also to "remain under and be subject to the registration requirements of Tier One under the New Jersey Registration and Community Notification Laws, N.J.Stat.Ann. 2C:7–1 et seq." [4] The State did not contest the terms of the order.

---

1. Two additional conditions not relevant to this opinion were imposed on July, 1995.

2. Megan's Law establishes a registration requirement for sex offenders who have completed a sentence for certain designated crimes and a three-tiered notification program through which communities are notified that such convicted persons are residing in their communities. N.J.Stat.Ann. 2C:7–2(b)(1); *Artway v. Attorney General*, 81 F.3d 1235 (3d Cir.1996).

3. The Bureau of Parole gives a Tier Two Designation to those parolees "likely" to reoffend (ie. moderate risk). A Tier Two Designation requires limited notice for the protection of the public. N.J.Stat.Ann. 2C:7–8c(2).

4. Tier one signifies the Board found the parolee was considered a "low risk" of reoffending.

As of November 1995, plaintiff has been employed full-time as a forklift operator in a warehouse. Upon obtaining employment he promptly notified his parole officer. The requirement that plaintiff or his parole officer notify the employer of his parole status is not an enumerated general or specific condition of parole. Plaintiff concedes that he never informed his employer of his conviction or of his parole status, but argues that employer notification was not a required condition of his parole. In December 1996, plaintiff's parole officer informed him that, pursuant to an internal Bureau of Parole policy, he must notify his employer of his parol status, otherwise, she was compelled to do so.[5] The State did not suggest that there was any evidence or suspicion indicating that plaintiff had in any manner violated his parole. Moreover, plaintiff's reporting requirements have been reduced to semi-annual reporting by the Bureau of Parole for over a year.

Plaintiff works five days a week, eight hours per day making slightly above minimum wage and certifies that there are no children in the warehouse where he works. He pays child support and his wife is disabled and unable to work. He believes he will lose his job if his employer is notified of the nature of his offense and of his parole status, and maintains that this in turn will impede his ability to find replacement work. He further argues that the notification requirement "was not imposed on the basis of any individualized determination that notifying the employer of the offense was needed in order to protect the public ..." (Ptf.'s Complaint ¶ 23).

Plaintiff's Complaint contains five causes of action including claims under 42 U.S.C. § 1983 involving questions of procedural and substantive due process. Defendants contend that plaintiff has failed to demonstrate that his motion for a preliminary injunction is warranted, and assert that the temporary restraining order frustrates their ability to meet the mandate of the Bureau's internal policy and interferes with their ability to monitor compliance with the special condition allowing the plaintiff to work with minors. They conclude that the Bureau is not "comfortable relying only on plaintiff's word that no children under 18 are present at the work place." (Dfts.' Br. at 6).

## II. STANDARD

The party seeking injunctive relief must demonstrate: 1) the likelihood of ultimate success on the merits; 2) probability of irreparable harm in the absence of injunctive relief; 3) balance of hardships in favor of granting the requested relief; and 4) public interest in favor of granting the requested relief. *Alessi v. Pennsylvania*, 893 F.2d 1444, 1447 (3d Cir.1990).

## III. LAW AND ANALYSIS

Plaintiff relies on this court's opinion in *CPM v. D'Ilio*, 916 F.Supp. 415 (D.N.J. 1996), to meet his burden of demonstrating a likelihood of success on the merits, a prerequisite to granting the relief he seeks.[6] (Ptf.'s

---

5. The Bureau's internal standard 802.5d states in pertinent part:

> In the following instances employers shall be notified within 30 days from the outset of employment, preferably by the parolee, that he or she is on parole, the commitment offense, the prior criminal history that makes disclosure necessary and the parole officer's name and phone number:
> 1. the parolee is employed on a "live-in" job, meaning employment and residence is on the property of the employer;
> 2. the criminal history includes aggressive crimes against person, such as but not limited to murder, assault, arson, etc. indicating a potential threat to employer or other employees;
> 3. the criminal history indicates a conflict with the type of employment, such as but not

limited to a forger employed in a bank, a controlled dangerous substance offender employed in a hospital, etc.; or
> 4. the legal requirements of the Alcoholic Beverage Control, the Board of Barber Examiners, and similar agencies jeopardize the employer's position or license.

6. This court's ruling in *C.P.M.* appears to be the only decision to analyze the question whether it is improper for a parole board to summarily notify an employer of a parolee's status after an unreasonable delay despite any showing of evidence or suspicion that the parolee had failed to comply with the terms of his parol. However, the notion that procedural due process makes it improper for a parole board to contact an employer after an unreasonable delay without affording a parolee an informal hearing is recognized in

Complaint ¶ 6). He argues that, under the circumstances, employer notification infringes on his liberty interest and offends the Due Process Clause of the Fourteenth Amendment. Plaintiff does not dispute the Parole Board's authority to impose certain rules and requirements during the term of his parole. However, he asserts that the requirement that he notify his employer of his parole status and of the nature of the offense is not imposed on the basis of any individualized determination, based on the characteristics of the offense, the degree of rehabilitation achieved, and the risks, if any, presented to the employer, which would justify putting plaintiff in jeopardy of losing his present and future employment. In addition, plaintiff argues that the Bureau of Parole's policy requiring post-employment notification to employers of the fact of parole or of the underlying crime is inconsistent with the statutory requirement that the parole officer facilitate the parolee's adjustment to society upon his release from incarceration and assist the parolee with obtaining employment.[7] Pointing to this court's decision in *C.P.M.*, that employer notification infringes on liberty interest which is protected by the Due Process Clause of the Fourteenth Amendment, he asserts that an injunction is warranted and necessary to protect his interests.

### (a.)

In *C.P.M.*, 916 F.Supp. 415, this court held that employer notification, under the circumstances of that case, infringed on a liberty interest protected by the Fourteenth Amendment. C.P.M., an individual with an extensive criminal history both as an adult and as a juvenile, was paroled after serving ten years of his sentence. At the time of his release the Parole Board considered him to be a "fair" parole risk and subjected him to considerable conditions, however, no condition required him to notify an employer of the conviction or his status as a parolee. *Id.* at 415–16. In early 1992, C.P.M. began to work for a mental health service organization. In November 1995, despite the lack of any suspicion or evidence that C.P.M. had violated the conditions of parole, the Bureau of Parole notified him that they were going to inform his employer of his parole status and convictions. *Id.*

The finding of a protectable liberty interest was based upon three factors: 1) the statutory requirement that the parole officer assist the parolee in obtaining employment; 2) the internal rule's requirement that employer notification take place within the first 30 days of employment; and 3) the parole board's failure to notify the parolee's employer within 30 days, "apparently exercising discretion on an individual basis." *Id.* at 421. Relying on the finding in *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), that "language of an unmistakably mandatory character" in a state statute or regulation may create a protected liberty interest, this court reasoned "[t]hese factors, particularly the mandatory restraint on discretion imposed by the statute and internal provision, support a finding of a protected liberty interest." 916 F.Supp. at 421. Accordingly, consistent with other courts, this court "determined that parolees

[n]umerous analogous cases supporting such a finding in the context of parole revocation. These include *United States v. Hamilton*, 708 F.2d 1412 (9th Cir.1983) ("Revocation of probation [by district court] after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of discretion."); *LaChance v. Reno*, 824 F.Supp. 29 (S.D.N.Y.1993), *aff'd*, 13 F.3d 586 (2d Cir.), *cert. denied*, 512 U.S. 1222, 114 S.Ct. 2711, 129 L.Ed.2d 837 (1994) (acknowledging Hamilton, supra, but holding that absent unfair tactics and prejudice to parolee, delay does not violate due process); *United States v. Tyler*, 605 F.2d 851 (5th Cir.1979) (delay of one year in seeking revocation for misdemeanor charges deprived probationer of right to due process); and *Greene v. Michigan Dept. of Corrections*, 315 F.2d 546 (6th Cir.1963) (reversing and remanding for hearing to determine from facts whether delay was reasonable where parole officials waited nine years before executing arrest warrant for parole violation). Notably, these cases involved violations of the parolees' or probationers' due process rights arising out of an established constitutional right to a hearing prior to revocation.
*C.P.M.*, 916 F.Supp. at 418–19.

7. *See* N.J.Stat.Ann. 30:4–123.59(e); *see also Morrissey v. Brewer*, 408 U.S. 471, 477, 92 S.Ct. 2593, 2598, 33 L.Ed.2d 484 (1972) ("[T]he parole officers are part of the administrative system designed to assist parolees and to offer them guidance.")

have a protected right in legitimate employment." *Id.* at 421 (citing *Kaufhold v. Bright,* 835 F.Supp. 294 (W.D.Va.1993)).

Defendants argue that *C.P.M.* is not controlling in the matter before this court, but rather that the Supreme Court's decision in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), controls. They request that this court reconsider its reliance on the *Hewitt* decision in *C.P.M.* and assert that the holding in *Sandin* mandates this reconsideration. Defendants state:

> If the *Sandin* analysis is employed here, instead of the rejected *Hewitt* analysis used in *C.P.M.,* it is clear that New Jersey has not created a liberty interest in preventing employer notification of a parolee's parol status and the nature of his conviction ... [T]he *Sandin* Court ... rejected the *Hewitt* "mechanical liberty interest" analysis relied on by this court in *C.P.M.* It instead endorsed an analysis that if applied in this circumstance would focus on the nature of the deprivation at issue and whether it imposed an "atypical or significant hardship" on a parolee "in relation to the ordinary incidents" of parole.

(Dfts.' Br. at 9–11). Defendants assert that the *Sandin* analysis extends beyond the prison walls to include parolees arguing that the distinction between parole and prisoner status is not so different because a parolee, as a prisoner, is in the custody and care of the New Jersey Department of Corrections. They do not argue that plaintiff is a danger to his employer, but only that the plaintiff has no reasonable expectation of privacy which prevents the Parole Board from notifying his employer, and that such notification conforms with the purpose of parole supervision.

In *Sandin,* 515 U.S. at 474, 115 S.Ct. at 2295, the Court re-examined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause. The Court analyzed its decision in *Hewitt* under which "the Court asked whether the State had gone beyond issuing mere procedural guidelines

and had used 'language of an unmistakably mandatory character' such that the incursion on liberty would not occur absent specified substantive predicates." *Sandin,* 515 U.S. at 480, 115 S.Ct. at 2298 (quoting *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871). The *Sandin* Court criticized that under *Hewitt* "no longer did inmates need to rely on a showing that they had suffered a 'grievous loss' of liberty retained even after sentenced to terms of imprisonment ... [citations omitted]. [F]or the Court has ceased to examine the 'nature' of the interest with respect to interests allegedly created by the State." *Sandin,* 515 U.S. at 480, 115 S.Ct. at 2298 (citations omitted). Through the application of *Hewitt* in later cases the Court realized, in a five to four ruling, that the search for mandatory language and its corresponding negative implications was generating undesirable results which often mandated review of "rather routine prison guidelines[,]" and of prisoners' asserted liberty interest in minor deprivations typically involving the discretion of prison officials. *Sandin,* 515 U.S. at 480, 115 S.Ct. at 2298.

> First, it creates disincentives for States to codify prison management procedures in the interest of uniform treatment ... States may avoid creation of 'liberty' interests by having scarcely any regulations, or by conferring standardless discretion on correctional personnel ... Second, the *Hewitt* approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone....
>
> ....[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.

515 U.S. at 482–83, 115 S.Ct. at 2299–300, 132 L.Ed.2d 418 (citations omitted). The *Sandin* Court recognized that states may create liberty interests protected by the Due Process Clause,[8] but it found that "these interests

---

**8.** *See* 515 U.S. at 480, 115 S.Ct. at 2298 (*citing Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)).

will be generally limited to freedom from restraint which ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 483, 115 S.Ct. at 2300 (citations omitted).[9] In reaching this decision the Court abandoned *Hewitt* 's methodology. However, *Sandin* did not "technically require [the. Court] to overrule any holding of this Court ... [*Sandin*] only abandons an approach that in practice is difficult to administer and which produces anomalous results." 515 U.S. at 484, n. 5, 115 S.Ct. at 2300, n. 5.[10]

Unlike *Sandin*, but similar to *C.P.M.*, the matter before this court involves state created liberty interests in the context of New Jersey's parole regulations, and examines whether under certain circumstances the parolee has a protectable liberty interest in his employment warranting procedural due process protection.[11] The parole process does not embrace the punitive function of incarceration, and even though parolees, like inmates, remain in legal custody,[12] they are subject to different state created rights and regulations from those imposed upon inmates. Thus, that law which attaches to prisoner claims does not necessarily attach to those claims involving parolee rights. Parole regulations give rise to a conglomeration of litigation issues of constitutional dimension distinct from those arising from prisoners' rights litigation.

In *C.P.M.* this court determined that parolees have a protectable liberty interest in their employment, and the reasons in support of this holding are equally applicable here. 916 F.Supp. at 415. Similar to the facts in *C.P.M.*, here the parole officer is authorized to notify Doe's employer of his criminal history within thirty days. Nevertheless, the parole officer did not do so within that time. Moreover, defendants admit that the parolee was satisfactorily performing the general and specific parole requirements, and that the failure to notify was based on defendants' oversight. Such factors, ie., the parole officer's obligation to assist parolees in obtaining employment, the language of the statute and

---

**9.** *See also E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997) ("[L]iberty interests that trigger procedural due process may be created by state law or by the federal constitution itself." *Id.* at 1105 (*citing Sandin*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418)).

**10.** For a close examination of the impact of *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), on prisons' rights litigation see Julia M. Glencer, An 'ATYPICAL AND SIGNIFICANT' BARRIER TO PRISONERS' PROCEDURAL DUE PROCESS CLAIMS BASED ON STATE-CREATED LIBERTY INTERESTS, 100 Dick.L.Rev. 861 (Summer 1996).

**11.** The New Jersey Parole Act, N.J.Stat.Ann. 30:4–123.45 et. seq. establishes the State Parole Board which serves to legislate parole authority and effectuate the terms and conditions of such parole. *See State v. Parker*, 15 N.J.Super. 412, 83 A.2d 535 (App.Div.1951). Courts may review the Board's actions to determine whether its powers are being exercised "arbitrarily or capriciously[,]" *In re Hawley*, 98 N.J. 108, 484 A.2d 684 (1984), but it is within the Board's discretion to determine a prisoner's parole eligibility, and the powers vested in the Board concerning parole eligibility are broad. *See e.g., Ex parte Domako*, 9 N.J. 443, 88 A.2d 606, *cert. denied*, 343 U.S. 987, 72 S.Ct. 1085, 96 L.Ed. 1374 (1952); *Cf. Monks v. New Jersey State Parole Board*, 58 N.J. 238, 277 A.2d 193 (1971) (holding that the Parole board has broad but not unlimited discretionary powers). Although in New Jersey the Parole Act of 1979 created a protected expectation of parole in inmates who are eligible for parole, *New Jersey State Parole Board v. Byrne*, 93 N.J. 192, 460 A.2d 103 (1983), parole is not a constitutional right, but an act created by the State as "a device for protection of society through rehabilitation of the offender." *State v. Davis*, 175 N.J.Super. 130, 417 A.2d 1075, *cert. denied*, 85 N.J. 136, 425 A.2d 291 (1980).

**12.** Pursuant to N.J.Stat.Ann. 30:4–123.59:

(a) Each adult parolee shall at all times remain in the legal custody of the Commissioner of Corrections ... [A] parolee ... shall remain under the supervision of the Bureau of Parole of the Department of Corrections ..., in accordance with the rules of the board.

(b) Each parolee shall agree, as evidenced by his signature to abide by specific conditions of parole established by the appropriate board panel which shall be enumerated in writing in a certificate of parole and shall be given to the parolee upon release. Such conditions shall include, among other things, a requirement that the parolee conduct himself in society in compliance with all laws and refrain from committing any crime ...

\* \* \* \* \* \*

(e) The assigned parole officer shall provide assistance to the parolee in obtaining employment, education or vocational training or in meeting other obligations.

\* \* \* \* \* \*

regulations at issue, the officer's failure to notify within thirty days, raise serious concerns about the propriety of notification. *Compare C.P.M.*, 916 F.Supp. at 421.

### (b.)

The requirement that parolees notify their employers of their parol status is not mandated by the New Jersey Parole Act, N.J.Stat.Ann. 30:4–123.45 et. seq. Employer notification is required by the Bureau of Parole's Standards under Section 802.5(d), and the language of the standard mandates a thirty day time period during which employers "shall" be notified.[13]  Here, the Chief of the Bureau of Parole recognizes the thirty day limit stated, but argues that the standard was adopted to limit parol officials' discretionary power in "cases involving potentially dangerous parolees ... [I]t was adopted to guide parole personnel in carrying out their supervision responsibilities in a manner which best serves the goals of the parole system." (Affidavit of Victor D'Ilio ¶¶ 17–18).  He states

> [P]arole officials have always investigated [the employment established at the time of the inmates release], including interviewing the employer, if deemed necessary ... Employer notification ... also allows the Bureau to monitor compliance with the special condition of parole, such as one imposed on plaintiff Doe in this case regarding working with minors. Without employer notification, there is no way the Bureau can monitor and ensure compliance. Special conditions may also be imposed, as here, that require monitoring of the employment to ensure compliance. The purpose of employer notification is not to harass the parolee but to ensure his success in the community and to reduce the incidence of reoffending, the dual goals

of the New Jersey's parole system. Nor does such employer notification invariably lead to loss of employment as plaintiff Doe claims.

(Affidavit of Victor D'Ilio ¶¶ 9–13).

Here, as in *C.P.M.*, it appears that neither the Board of Parole nor the Bureau of Parole has ever published a rule or regulation requiring employer notification. Rather the Bureau of Parole proceeds on the authority of internal rules which have not been published. Plaintiff argues that the internal rules asserting standards for post-employment notification are null and void because they have not been properly promulgated.[14]  For this reason, plaintiff argues that application of the Bureau of Parole's internal rules deprives him of procedural and substantive due process because it interferes with a privacy interest and property interest in his employment. In addition, he argues that there is no rational rehabilitative purpose to be served by such notification, given that from the time he received instruction by the parole officer to inform his employer, over two and one-half years had transpired since his parole, and over thirteen months had transpired since he was initially employed.

Employer notification serves an important role in protecting not only the employer but also those persons who are in close contact with the parolee during their employment. The purpose of notification is not to punish the parolee for his convictions, but to protect those members of the public who are at risk. *See, eg. E.B. v. Verniero*, 119 F.3d 1077 (3d Cir.1997). Here, the Parole Board seeks to enforce a practice which they say guarantees them absolute discretion to notify employers any time after thirty days without evidence or suspicion of wrong-doing.

---

13.  See note 5, *supra*, at 487.

14.  N.J.Stat.Ann. 30:4–123.48(d) describes the procedures through which the Board of Parole rules and regulations are promulgated:

> The board shall promulgate such reasonable rules and regulations, consistent with this act, as may be necessary for the proper discharge of its responsibilities. The chairman shall file such rules and regulations with the Secretary of State. The provisions of the "Administrative Procedure Act," P.L.1968, c. 40 (N.J.Stat. Ann. 52:14B–1 et seq.) shall apply to the promulgation of rules and regulations concerning policy and administration, but not other actions taken under this act, such as parole hearings, parole revocation hearings and review of parole cases. In determination of its rules and regulations concerning policy and administration, the board shall consult the Governor, the Commissioner of Corrections and the Juvenile Justice Commission established pursuant to section 2 of P.L.1995, c. 284 (N.J.Stat. Ann.52:17B–170).

Since this court's ruling in *C.P.M.*, New Jersey legislation requiring public notification of an offenders' criminal history and parol status has been subject to much opposition demanding both federal and state judicial review, concerning persons subject to notification requirements, particularly those convicted for sex offenses. The review has spawned additional rights for this class of individuals. In *Doe v. Poritz*, for example, the New Jersey Supreme Court upheld N.J.Stat.Ann. 2C:7–1 et seq., ("Megan's Law"), the statutory scheme which outlines tier designations requiring community notification of convicted sex offenders. 142 N.J. 1, 662 A.2d 367 (N.J.1995). Tier designations assess the risk of reoffense and the need for community notification. N.J.Stat.Ann. 2C:7–8(d)(1). Generally, the degree of risk of reoffense triggers a higher tier designation and consequently, stricter notification requirements.[15] However, as highlighted in our decision in *C.P.M.*, 916 F.Supp. 415, the *Doe* court found that community notification had the potential of harming the reputation of sex offenders with a Tier Two or Tier Three designation. Enumerated as some of the potential harms are public embarrassment and ridicule, harm to a person's good name or reputation, and the incursion of one's right to privacy. *Doe*, 142 N.J. at 102, 662 A.2d at 418. Therefore, sufficient constitutional interests were found to be challenged. *Doe*, 142 N.J. at 103–107, 662 A.2d at 419–21. In addition, the *Doe* court observed that "[e]ven if principles of due process did not require that defendants classified as Tier Two or Three be granted a pre-notification hearing, such process would be required by considerations of fundamental fairness." 142 N.J. at

107–08, 662 A.2d at 421–22. Although in *C.P.M.* the parolee was not a convicted sex offender, this court found the constitutional analysis involving notification and the court's focus on considerations of fundamental fairness in *Doe* applicable. Accordingly, this court held that parolees had the right to a hearing prior to notification under both the federal and state constitutions, where "the government was implementing rules in an arbitrary manner to the detriment of its rehabilitated offenders." 916 F.Supp. at 420–22; *see also Artway v. The Attorney General of the State of New Jersey*, 81 F.3d 1235 (3d Cir.1996).

Within two years of the *Doe* decision, in *E.B. v. Verniero* the Third Circuit was faced with challenges to the constitutionality of the notification requirements of New Jersey's Megan's Law based on Ex Post Fact, Double Jeopardy, and Due Process Clauses of the United States Constitution. 119 F.3d 1077 (3d Cir.1997). Although the Third Circuit rejected the notion that Megan's Law violated of the Ex Post Facto or Double Jeopardy Clauses of the Constitution, it found that any Tier Two or Tier Three notification occurring without a prior opportunity to challenge the registrant's classification and notification in a hearing violated the Due Process Clause. The Third Circuit shifted the burden of persuasion from the individual to the prosecutor, requiring proof by clear and convincing evidence that a registrant's classification and notification plan is warranted. *Id.* at 1111. On December 9, 1997, the significance of *E.B. v. Verniero* was recognized by the New Jersey Supreme Court, when it issued an Order implementing that decision.[16]

---

15. Tier One notification requires the county prosecutors to notify only law enforcement agencies likely to encounter the registrant. N.J.Stat.Ann. 2C:7–8c(1). Tier Two notification also requires the county prosecutors to notify law enforcement agencies, but the requirements in addition include registered schools, day care centers, summer camps and other children's or women's organizations giving care to potential victims in areas where the registrant is likely to be encountered. N.J.Stat.Ann. 2C:7–8(c)(2). Finally, Tier Three requires the county prosecutors to notify all those listed under Tier two and all members of the public likely to encounter the registrant. N.J.Stat.Ann. 2C:7–8c(3).

16. Pursuant to the Administrative Office of the Courts State of New Jersey Release Before federal court actions put community notification on hold, the New Jersey Supreme Court had upheld such notification in its July 25, 1995, decision of *Doe v. Poritz*. Following that decision, the Judiciary—in addition to establishing procedures for the handling of Megan's Law matters—designated at least one judge in each county, plus a backup judge, to conduct the hearings in which an offender challenges the proposed scope of notification.

The U.S. Court of Appeals required that the burden of proof be on the state to show that notification is proper. It also provided for redetermination of those cases already decided

Much of the litigation surrounding the implementation of Megan's Law deals with the different levels of community notification, and the effects, whether legal or practical, which inevitably developed or were likely to develop as a consequence of its implementation. Due process concerns arising from the present case do not differ simply because this case involves notification to an employer and not to numerous members of the community. Also, the fact that the notification requirements at issue stem from an internal standard and not a statute does not diminish the state's obligation to afford individuals due process protection.

Here, approximately thirteen months after plaintiff established himself in his employment, and successfully worked toward maintaining his position, he was informed that his employer was going to be notified of his conviction and parol status. He has abided by the terms of parole and even though he was designated Tier Two he was relieved from that portion of the Tier Two notification requirements compelling notification to any school or community organization. Given the nature of his offense, their exists a real possibility that plaintiff's reputation, privacy interests and present employment will be jeopardized through notification. No facts show why there is a need to notify the employer without first affording plaintiff the opportunity to be heard. A hearing will determine if the notification suggested will violate plaintiff's Tier designation without affording him the protections established by the Third Circuit in *E.B. v. Verniero.* "Procedural due process seeks to ensure the accurate determination of decisional facts, and informed, unbiased exercises of official discretion." *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 797, 100 S.Ct. 2467, 2481, 65 L.Ed.2d 506 (1980) (Blackmun, concurring). Affording a hearing prior to allowing notifica-

tion under the circumstances here will ensure that the plaintiff's rights are protected.

## IV. CONCLUSION

For the reasons stated herein, plaintiff's motion for injunctive relief is granted. Defendants are enjoined from informing plaintiff's employer of his status as a parolee and the nature of his crime without first conducting a hearing as described above.

An appropriate order will be entered.

in which the burden had been on the sex offender to show why notification would not proceed. Under the procedures adopted today, for those who have already been deemed by a judge to be subject to community notification, redetermination in accord with the standard set out by the U.S. Court of Appeals is to be made in most cases within 45 days of notice from a prosecutor to the sex offender that community notification again will be sought. However, upon receipt of that notice, the sex offender has 14 days to decide whether to seek a redetermination. If he or she does not, community notification can proceed upon authorization of the judge.
New Supreme Court Order, Administrative Office of the Courts State of New Jersey Release (Dec. 9, 1997).